## CALEB HALL *v.* IRA PARSONS.

In the case of an alleged continued possession, or a joint possession, of
property, such as to render a sale or assignment fraudulent in law, the
jury should not be instructed that, if they find certain alleged facts
proved, they will be evidence of such a possession, or joint possession,
as to render the sale or assignment thus fraudulent; but the question of
possession or joint possession, should be left to them, to be decided from
the facts they shall find proved, with general instructions, as to what con-
stitutes possession.

.  THIS was an action of trespass, brought to recover the
value of certain goods attached by the defendant, as sheriff,
at the suit of Hunter, Kellogg & Co. on the 17th day of
February, 1840, as the property of Caleb B. Hall. Plea not
guilty, and issue to the country.

.  On trial in the county court, the plaintiff gave in evidence
an assignment to him by the said Caleb B. Hall, under date
of the 27th of January, 1840, of all the goods, wares and

merchandize of the said Caleb B., of every description, then in the store occupied by him, agreeably to an inventory of the same, to be delivered to the said Caleb, with the assigment, or as soon thereafter, as the same could be made ; and, also, all the debts due the said Caleb B. ; also, one horse and har- ness, one wagon, one sleigh, and all the grain and pork in the store ; and, also, two pieces of land in Clarendon, of which he was to execute to said assignee suitable convey- ances ; which assignment was declared, therein, to be made for the purpose, first, of paying all the debts of said Caleb B. for which the said Caleb was holden as surety,—next of paying the amount the said Caleb had paid for him, and then to pay, equally, the other debts of the said Caleb B.

The plaintiff then proved that he had signed for said Ca- leb B., and was holden for him, to the amount of $4109.25 ; that the deed of assigment was executed and delivered on the day it bears date, and that a deed of bargain and sale was executed on the same day, of the real estate, mentioned in said assignment, and recorded in the town clerk's office at Clarendon, on the same day ; that said real estate was worth about $1200, and that that, and the other property mention- ed in the assignment, was all the property owned by the said Caleb B., and that the plaintiff was a man of property and responsible, and accepted of said trust.   It further ap- peared, that the goods mentioned in said assignment, were in a store owned by the plaintiff, and which had been for some time occupied by said Caleb B., by the license of the plain- tiff ;—that Merrit Hall had been employed as a clerk by said Caleb B., and was so employed in the store at the time of the assignment ; that he was informed by the said Caleb B. of the assignment, on the evening of the day it was made, and requested by him, not to mention it, until the next morn- ing ; that, at the time of the assignment, the said Caleb B. inquired of the plaintiff whether he should want said clerk, and was informed that he should want him till March, and if he bought goods for himself in the spring, he should want him through the summer, and that this was communicated to the clerk by said Caleb B. on the evening of the day the asign- ment was made.

The plaintiff also offered evidence, tending to show, that, on the morning after the assignment, he took possession of

the horse, harness, waggon and sleigh, and removed them to his house, and, at the same time, went to said store and took down the sign of said Caleb B., assumed the charge and direction of the store, gave directions to said clerk, and forbid him to pay or deliver any of said goods on the debts of said Caleb B., without his, the plaintiff's, consent ; and opened a new set of books of his own, on which all charges were thereafter made. He also offered evidence tending to show, that after he, the plaintiff, assumed the charge and direction of the store, said clerk received all his orders and direction from the plaintiff, and that said Caleb B. never after gave, or attempted to give, him any directions about said business, but disclaimed, at all times, any power or authority so to do; and that said Caleb B., after said assignment, never had or took the key of said store, but that the same was, ever after, in the possession of said clerk or the plaintiff, and that the plaintiff, on all occasions, claimed the sole right and authority over the property mentioned in said assignment.

The plaintiff further offered evidence tending to show, that the books and accounts and all the papers belonging to said Caleb B. were removed· from the store to his, the said Caleb B.'s, dwelling house, immediately after the assignment, and . that he kept the books about a week, when he returned the ledger and day book to the store, for the purpose of enabling plaintiff, to receive payment on said accounts ; that an inventory of the dry goods was made before said assignment, and that the inventory of the remainder of said goods was completed within two or three days after, by the said Caleb B. and the said clerk ; that, though said Caleb B. was frequently at the store, yet that he declined acting as clerk or salesman of said goods, except in two or three instances, when, at the request of plaintiff, and in his presence, he dealt out a few goods, and, in one instance sold a half pound of tobacco, without being requested—the clerk. being in the back room.

The plaintiff also offered evidence tending to show, that said goods were attached on the 17th day of February, 1840 ; that said Caleb B. was not in the store on that day until after the attachment, and that said clerk was in said store, doing the business.

The plaintiff further offered evidence tending to show,

that said transfer or assignment was matter of general notoriety, and that he spent a part of his own time in said store, from the time of the assignment, until the attachment, and that defendant was notified of the assignment before making the attachment, and that said assignment, inventory, and list of liabilities were all exhibited to him before said attachment was made.

The defendant offered evidence tending to prove that the said Caleb B. remained in said store, after the assignment, and continued in the possession, and sold the goods to customers, and charged them upon the books, and in many instances paid his own debts, in goods from said store, with the knowledge and consent of the plaintiff; that he kept his books at said store for the purpose of settling with his customers, and spent most of his time there, after the assignment, and up to the time of the attachment, except about one week while he was posting his books, and was, during that time, at the store in the evenings; that, in some instances, he had the sole care and charge of said store, in the absence of the clerk, and the plaintiff, and sold goods and received pay; that he settled his books and received pay and took notes, and when balances were against him he paid in goods; and that the said Caleb B. paid in goods his outstanding due bills for goods, previously given.

The defendant also proved that the said Merritt Hall continued to board with the said Caleb B. after the assignment, up to the time of the attachment, as he had done before; and that the plaintiff had never made any contract with him, as clerk, or said any thing to him on the subject; and further, that while the books were at the house of the said Caleb B. he settled some accounts with individuals, and when balances were due from him, he gave minutes of the balances due, to the individuals, who presented them to Merrit Hall the clerk, and received the pay thereon.

The plaintiff, to explain defendant's testimony, offered evidence to prove that said accounts, settled by said Caleb B., were open and unadjusted accounts, that required to be settled by said Caleb B., and that, in every case, in which he received pay, he immediately delivered the money to the plaintiff; that, as to the boarding of the said clerk, when said assignment was made, said Caleb B. proposed that he should

go to plaintiff's house to board, but that the plaintiff said he had better stay where he was until plaintiff and said Caleb B. should change houses, about the first of April thereafter, as his board would have to come out of the goods, as plaintiff said, and that he was as willing to pay said Caleb B. for boarding him, as to board him himself; and that the said clerk always slept in the store, and was at said Caleb B.'s only at meals.

The evidence being closed, defendant moved the court that plaintiff become non-suit, because said acts of said Caleb made the assignment fraudulent and void in law.

The court informed the counsel for the plaintiff, that they should charge the jury that, if they found the sale and assignment was made for a valuable consideration, yet, if they found that Caleb B. took the books to his house only for a short time, while posting, and then returned them to the store, and was in the store settling the accounts, sometimes paying the balance, when any was against him, out of the store, and assisting in dealing out goods to customers as well as to his creditors, although it was under the direction, and with the consent of the plaintiff; and if the same clerk remained in the store, selling goods, as before the assignment, and boarding with the said Caleb B. as before, it would be evidence of such a possession of the said Caleb B., or at least such a joint possession with the plaintiff, as would render the sale fraudulent and inoperative in law ; and that it would make no difference, in this respect, that the sale was by way of assignment, and for the purpose of paying his, the said Caleb B.'s debts ;—and further, that the plaintiff's taking down the sign, procuring a new set of books, and assuming the charge, direction and control of the store and business, would not be such an exclusive possession as to take the case out of the operation of the rule, if the same clerk remained in the store, no otherwise employed by the plaintiff, than by the said Caleb B., as stated in the evidence, and the said Caleb B. remained in the store settling his accounts and receiving pay thereon, and paying out of the store, on his own debts, notwithstanding the services of the said Caleb B. were necessary to the plaintiff as assignee, and he acted under the control and direction of the plaintiff.

The counsel for the plaintiff objecting to such charge, consented to a non-suit, to be set aside if the proposed charge was

erroneous. A non-suit was thereupon entered, and the plaintiff excepted.

RUTLAND,
*February,*
1843.

Hall
*v.*
Parsons.

*E. L. Ormsbee* and *C. Linsley* argued for plaintiff.

*R. R. Thrall, E. N. Briggs,* and *J. Collamer,* for defendants.

Upon a sale of personal property, there must be a substantial, visible change of possession, and one which is exclusive in the vendee. This rule has been so often settled by the supreme court in this state, that it is not open to discussion. *Durkee* v. *Mahoney,* 1 Aik. 116; *Weeks* v. *Weed,* 2 Aik. 64; *Mott* v. *McNeal,* 1 Aik. 162; *Kendall* v. *Landon,* 12 Vt. R. 516; *Judd & Harris* v. *Langdon,* 5 Vt. R. 231, similar to the present case; *Morris et al.* v. *Hyde,* 8 Vt. R. 356.

The only question is, whether the facts, contained in this case, bring it within the rule thus established. The facts very clearly show that there was a concurrent possession, after the sale or assignment, between the vendor and vendee or assignee, and that there was not an exclusive possession by the plaintiff.

The opinion of the court was delivered by

HEBARD, J.—The questions in this case grow out of the opinion of the county court in relation to the character, and effect, of the testimony given on trial before that court.

The doctrine has become well settled, in this state, that possession must accompany the sale, or it will be fraudulent in law, as to creditors. In relation to what amounts to a change of possession, it has been a subject of discussion, and has, in a number of cases, been considered by the court, with reference to the particular circumstances of the particular cases. It has been considered a matter of policy, that, for the prevention of actual frauds, this rule should not be relaxed; and the important inquiry in this case is, whether what the plaintiff contends for, would tend to relax the rule. The case does not find that the defendant put himself upon the showing that this sale or assignment was fraudulent in fact, but merely void for want of such an open and visible change of possession as the law requires. The policy of this rule is to

guard and protect the public against sales which are fraudulent in fact. The rule, requiring this change of possession, institutes the inquiry, in the case upon trial, in whom was the possession? The application of this rule as to possession, admits that the possession may be, in fact, in a third person, as agent for the vendee. The point to be determined in this case, in the first place, was—in whom was the possession, in fact, at the time of the attachment? If the possession was in Merrit Hall, then whose agent was Merrit Hall? These two inquiries rest entirely in proof, and should have been settled by the jury, with proper instructions from the court, in relation to what constitutes *possession* and *agency*. The court told the plaintiff that they should instruct the jury that, if they found certain facts *proved*, the sale would be fraudulent in law.

Those facts might very properly have been submitted to the jury for them to find, from the facts, whether the assignment was fraudulent, in fact. For it is true, under this rule, that, although the sale might have been formal, and exact in all the outward requirements, still, in fact, it might have been fraudulent and void. And, on the other hand, although the sale might have been made *bona fide,* being no way fraudulent in fact, still if it lacked this outward badge, a change of possession, it would be frandulent in law, and void as to creditors. It then became important for the jury to find in whom was the possession at the time of the attachment; for, although possession may not accompany the sale, still, if possession is taken before the attachment, that is sufficient.

The *law,* applicable to the case, admits of no discussion. The only question is, whether the case comes within the law; for, in this case, as in all others, the *case* must bend to the *rule,* and not the rule to the case.

The court informed the counsel, that they should charge the jury that if they found certain facts, the sale would be fraudulent and inoperative, in law. Although those facts might be sufficient to incline the mind to that conclusion, still the *conclusion* should have resulted from the operation of the facts upon the minds of the jury, rather than upon the minds of the court. The jury should have been directed to the inquiry whether Merrit Hall was the servant of the

plaintiff. If he was, his possession was the plaintiff's possession. They should, also, have been directed to inquire, whether the possession of the plaintiff was exclusive, or whether it was concurrent with the said Caleb B.

What may constitute an exclusive possession, is well considered in the case of *Allen* v. *Edgerton*, 3 Vt. R. 442. That was a case of assignment of personal property, a part of which consisted of cloth, yarn, &c. in an unfinished state, and a quantity of wool in a factory; and it was a part of the agreement, that the assignor was to assist, or have a voice, in the sale and manufacture of the same—and that, in point of fact, the assignor was advising in relation to their manufacture. The defendant insisted, in that case, that those facts constituted a joint possession, and that the assignment was, therefore, void. The court held that a joint possession in the vendor and vendee, would be a fraud in law, and render the sale void as to creditors; but that if the sale was *bona fide*, in order to render it void, the possession and use of the vendor must be of the same description as that of a joint owner, in using, occupying and disposing of the property.

In that case, as in this, the important inquiry is, who was at the head, controlling the business? And if a careful observer would be at a loss to determine, it would be deemed a joint possession. And this is a fact for the jury to find from all the facts proved in the case.

The facts in this case might with propriety have been submitted to the jury, with proper instructions, for them to find in whom was the possession, and whether it was a joint, or exclusive possession. And in determining the point, it would be proper for them to consider the fact that the plaintiff owned the store and land—that the sign had been taken down—that a new set of books had been procured, and used, and whatever other outward change there was in the circumstances, and in the persons who were in attendance upon the business of the store.

In determining in relation to fraud, in law, it made no difference where the clerk boarded, or by whom he was first informed of the change. If the question was in relation to fraud, in fact, it would be different.

The case of *Farnsworth* v. *Shepard*, 6 Vt. R. 521, recognizes

the doctrine that the vendor may have some occasional and temporary possession of the property, without affecting the validity of the sale.

In the case of *Wilson* v. *Hooper*, 12 Vt. R. 653, the court attach very much importance to the fact that the vendee had a deed of the premises on which the property was kept; and the question of concurrent possession was, very properly, submitted to the jury.

The case of *Judd & Harris* v. *Langdon*, 5 Vt. R. 231, is relied upon by the defendant. But that case is distinguished from the one at bar, in a number of important particulars. In that case the property sold was two colts. They were on a farm owned by the vendor. The plaintiffs took a deed of the farm, but did not put it on record till after the attachment. They never had the colts in their possession, nor did they employ any one to keep them; nor did they furnish any keeping for them; but they were left on the premises where the vendor had kept them, in the keeping of the same man, and foddered in the same manner as before. The present case is different in all these particulars. The plaintiff owned the store and land. On taking the assignment of the goods, the sign was taken down. A new set of books was opened. The same clerk was in the store, but he received his instructions from the plaintiff, and was in his employ, and kept the key, and had the sole care of the store. And all these facts were notorious as to the public, and actually known to the defendant. In the case of *Wilson* v. *Hooper*, the vendor and vendee were, in fact, in possession of the property, but the jury were left to find whether they had equal control and direction of it.

Judgment that the rule become absolute, and a new trial granted.

WILLIAMS, Ch. J., dissenting. — I have always considered that the principles adopted in this state, in relation to sales void and inoperative in law, for want of a change of possession, as highly salutary and conservative. It must be admitted that the principle has been greatly relaxed, if not abandoned, in Great Britain, and in some of our sister states. We have rather prided ourselves for our firmness in adhering to the rule, and our determination not to advance a whit, or

recede a jot, and have been complimented therefor by the learned and able Chancellor Kent, whose opinion, alone, is usually a sufficient authority in this court, on any question which comes up for our determination. I fear the time has arrived, which he anticipated, when we are about to yield, and retrace our steps, and to take from " this branch of law the quality of uniformity," and either decide directly against the rule, or engraft an exception as broad as the rule itself. The principle which was laid down in the case of *Edwards* v. *Hasler*, 2 Term R. 589, and which, it was said, had been ruled forty times in Guildhall, is, that if a creditor, or any one else, takes an absolute bill of sale or conveyance, the possession must be delivered immediately, *and accompany and follow the deed*. The court in this state have been very emphatic in their language on this subject, and have said there must be a substantial, visible, clear, notorious change of possession, not colorable; and in one case, where the property came back into the possession of the vendor without the consent of the vendee, still it was held to be liable to attachment by the creditors of the vendor. *Emerson* v. *Hyde*, 8 Vt. R. 352. The court have considered, heretofore, that the purchaser must take the possession entirely to the exclusion of any possession in the vendor; and have made use of these different and emphatic expressions to guard against any subterfuge or pretence by which the rule could be avoided; and have, inflexibly, determined that a constructive possession, which always attends the ownership of personal property, should not avail to protect it against the claims of the creditors of the vendor, while there is any actual possession still remaining with the vendor. The language of Lord Ellenborough, in *Woodall* v. *Smith*, 1 Camp. 332, is, that a concurrent possession with the former owner is colorable. There must be an exclusive possession under the assignment, or it is fraudulent and void as against creditors.

Assuming the rule of law to be as laid down in the cases above named, and in the several cases where it has been before the courts in this state, we may inquire whether there is any reason why it should not apply to the present case, or any circumstance in the case to make it an exception to the rule, except the ever varying circumstances which may al-

ways be expected to attend every case, where the object is, in fact, and in principle, the same.

I understand my brethren do not consider that it forms any exception to the rule, that the plaintiff was an assignee, and also an endorser, for C. B. Hall, the vendor. And, indeed, I know of no reason why it should. In *Edwards* v. *Hasler*, the assignment was made to a creditor. It is supposed, in all cases when the rule applies, that there is no evil intention ; and that a full and adequate consideration has been paid.

The plaintiff was an endorser, or surety, for his son, the vendor ; and, possibly, by that very act of his, the son procured goods to a large amount, and then obtained credit from the creditors, at whose suit the defendant, as sheriff, attached the property in question. The equity and justice of the claims of the attaching creditors are, at least, equal to those of the plaintiff. In examining the case, we are to look only at the evidence as stated by the court. The plaintiff claimed that he had proved an exclusive possession in himself. The defendant contended that he had proved a possession in the vendor, and acts of ownership by him, from the date of the assignment to the time of the attachment. It appears, by the bill of exceptions, that the facts, as claimed to be proved by *either* party, made a strong case in his favor. The defendant moved for a nonsuit, which the court declined to order. The court then told the parties how they should charge the jury, if certain facts were proved, and upon that the plaintiff submitted to a nonsuit. In determining the correctness of the positions laid down by the county court, we are not to resort to the evidence as detailed in the bill of exceptions. Every fact there claimed to have been proved might have been controverted to the jury. I shall, therefore, take no notice of the evidence in relation to the key of the store, on the one side, or any of the evidence on the other, except so far as the county court noticed them in the charge which they declared they should give, as the plaintiff was at liberty to dispute every fact there stated, and obtain the decision of the jury thereon. The court took nothing from the jury, nor did they lay any particular stress upon any part of the testimony ; but, if certain facts were proved, they said it would be evidence of such a possession in the vendor, or, at

least, of such a joint possession, with the plaintiff, as to render the sale inoperative. Those facts were these :

Caleb B. Hall had occupied the store, and carried on the business of merchandizing there for some time. The building was owned by his father, the plaintiff. After the assignment he, Caleb B., took the books home to his house for a few days; but, at that time, was in the store, evenings. After a few days he returned the books to the store, and was there himself, settling his accounts on book, and, when the balance was against him, paying that balance in goods, out of the store. He assisted in dealing out goods to customers, as well as to his creditors. The same clerk, Merritt Hall, remained in the store, selling goods as before the assignment, boarding with Caleb B., the vendor, as before ; informed of the assignment only by Caleb B., and spoken to, to remain there for the plaintiff, only by the said Caleb B. Was not this evidence of a possession, or joint possession, in Caleb B., as the county court decided ? To me it appears very clear that it was. What were the acts of possession of the plaintiff, as supposed, in the charge intended to be given ? *Consenting* that Caleb B. should thus pay his creditors — assuming the control — getting a new set of books, taking down the sign of Caleb B., and directing Caleb B. to employ the clerk. Neither of them calculated to hold out, publicly, that he was the sole and exclusive owner and possessor, and that Caleb B. was not such an owner and possessor.

Every thing was calculated to hold out the appearance that there was no change of ownership or possession. The former owner, Caleb B., at the store, settling his accounts, dealing out goods to his creditors, and behind the counter waiting upon customers. This clerk, who had been a member of his family, boarding with him, still remaining a clerk in the store, and a member of his family. And can it alter these unequivocal acts of possession, that the plaintiff consented to this, when his very consent is the fact which should avoid his assignment — or that he kept a new set of books — a circumstance not at all calculated to show any visible change of possession — or that he took down the sign, which might be done even while the clerk was dealing out goods — or that the clerk and the vendor acted with his consent, as his agent ? To me it appears very clear that the possession of

Rutland, February, 1843.

Adm'x of Bigelow v. Cong. Soc. of Middletown.

the plaintiff was nothing more than a constructive possession ; or, at least, that there were such acts of ownership and possession in Caleb B., and so few indications of any change, of either ownership or possession, as to subject the goods in the store to the attachment of the creditors of Caleb B. Hall, the vendor. I must, therefore, dissent from the opinion delivered by my brother as the opinion of the majority of the court.