## BOYDEN S. SLEEPER v. THOMAS POLLARD.

### Change of possession.   Attachment.

The defendant bought of W. a bay of hay in a barn on a farm which W. occupied
and carried on by his hired man, and removed a part of it, and requested W.'s
hired man to take care of the remainder for him, which the hired man, with the
knowledge of W., agreed to do. The rest of the barn was occupied with other
hay and property of W. *Held*, that there was not a sufficient change of possession
of that part of the bay of hay that remained to protect it from attachment by W.'s
creditors.

TRESPASS for a quantity of hay. Plea, the general issue; trial
by jury, January Term, 1856,—UNDERWOOD, J., presiding.

The plaintiff, as deputy sheriff, attached the hay in question as
the property of William Woodman upon a writ against him in fa-
favor of George Sleeper. The hay was in a barn on the Dwight
farm, so called, in Vershire, which Woodman carried on during the
year of the attachment by one Kelley, who lived on the farm at the
time of the attachment, and worked on it by the month. Wood-
man cut the hay on the farm, and put part of it in a bay upon
some old hay cut on the farm the year previous, which he had
bought of Dwight. Kelley remained on the farm, as Woodman's
hired man, after the hay was cut, and gathered in the other crops,
such as potatoes, corn and apples, Woodman himself having gone
to New York just before the attachment.

It appeared that on the 17th of August, 1854, Woodman sold
said bay of hay to the defendant Pollard, and gave him a bill of
sale of it, and that the defendant paid, at the time, $8 per ton, the
weight being estimated by measurement; and the testimony tended
to show that Pollard drew away a part of the hay before the at-
tachment, and a part after; and that when Woodman sold the hay
he told the defendant it might remain in the barn until he was
ready to draw it away; and that, in the presence of Woodman, the
defendant requested Kelley to take care of it for him, and that
Kelley said he would. It appeared that, after the sale, and after
the attachment, Woodman had other hay and other property, a
horse, cart, plow, and other crops, as before stated, and a yoke of
oxen and a lot of mining tools, on the farm and in and about the
barn.

The defendant requested the court to charge the jury that if they

found that Kelley, at the time of the sale, agreed with the defend-
ant to take care of the hay for him until he should draw it away, and
that this was known to Woodman, that there was such a change
of possession that the hay was not liable to attachment by Wood-
man's creditors, and that the defendant was entitled to recover.
But the court declined so to charge, and decided that the evidence
did not show such a change of possession as would protect the hay
from attachment, and instructed the jury that the plaintiff was en-
titled to recover for that part of the hay, and that only, which was
removed by the defendant after the attachment. To this charge of
the court, and to their refusal to charge as requested, the defendant
excepted. Verdict for the plaintiff.

*Peck & Colby* for the defendant.

*A. M. Dickey* for the plaintiff.

By THE COURT, REDFIELD, CH. J. It does not appear to us
that there was any such change of possession, in the present case,
as the law requires to protect the property from attachment.

It was in the barn of the debtor, or one in his possession, or that
of his hired man, which is his possession in law; and it remained
there until the attachment, nothing being done to indicate a change
of ownership, except to request the hired man to take care of it
for the purchaser, he still continuing in the employ of the debtor.
This, certainly, could not be regarded as a visible, substantial
change of possession.

The case seems to us, in principle, and in many of its leading
facts, very similar to that of *Beattie* v. *Robin*, 2 Vt. 181, and *Judd*
v. *Langdon*, 5 Vt. 231.

Judgment affirmed.