JOHN PARKER *v.* RUFUS KENDRICK AND HIRAM MOORE.

*Fraud in law. Reasonable inquiry.*

The charge of the county court, considered in connection with the testimony to which it had reference, *held* conformable to the decisions and law in this state respecting the change of possession required upon a sale or mortgage of personal estate to make it available against the creditors of the vendor or mortgagor.

Reasonable inquiry in reference to a particular subject is such inquiry as a prudent and careful man would make upon a subject of equal importance in which he was interested.

TROVER for certain hides and leather. Plea the general issue; trial by jury, December Term, 1856,— UNDERWOOD, J., presiding.

The plaintiff introduced evidence tending to show, that as early as 1851 he became the joint owner with one Daniel Tarbell, jr., of certain tannery premises, and of the stock therein ; that they entered into a partnership in the business of purchasing hides, tanning the same and selling the leather, under the firm of J. Parker & Co., and carried on said business until September 21st, 1853, the plaintiff being the active partner, and having the sole and exclusive management of the business; that about the 29th of June, 1852, the plaintiff purchased of Tarbell one-half of a building at South Royalton, called the shoe shop, and gave therefor two notes of two hundred and fifty dollars each, which Tarbell transferred to Solomon Downer, who owned and held them on said 21st of September, 1853, at which time said Tarbell purchased out the plaintiff's interest in the stock in said tannery, and his half at the shoe shop, and that upon that occasion Tarbell executed to the plaintiff a note for one thousand and fifty dollars, a guaranty against, and an agreement to pay the two notes held by Downer, and a further agreement which was as follows :

" South Royalton, September 21, 1853. I hereby agree to turn out to John Parker all the stock in the tannery, and all the stock belonging to the same, whether in the process of tanning or in the finish room, or in green state, as collateral security for the payment of one promissory note, dated September 20, 1853, for the

sum of one thousand and fifty dollars, and payable on demand. I also turn out to said Parker all the above stock for the security of the payment of two notes for two hundred and fifty dollars each, signed by said Parker, now in the hands of Solomon Downer; said notes are dated June 29, 1852, and are payable, one in one year from date, and one in two years from date, with interest annually. I also agree that said Parker may have the use of said tannery buildings, yard, &c., and also the finishing rooms, for the purpose of holding possession of the above stock, for the consideration of my having the use of all the land and orchard belonging to us jointly.

"I Daniel Tarbell, jr., reserve to myself the right to carry on said tannery in any way I may choose, by at all times keeping the amount of said stock good, so as not to weaken or impair the security said Parker may have in the same."

The plaintiff's evidence tended further to show that he continued to hold and keep the same possession and control of the tannery premises and the stock therein as he had held and exercised during the continuance of the partnership, until the property was taken and carried away by the defendant Moore on an execution in favor of Kendrick against Tarbell, for which taking and carrying away this suit was brought; and that Tarbell at no time took any control or management of the same, either before or after said sale, and was not upon the tannery premises at all after the sale and before the levy of said execution.

The defendants introduced evidence tending to show, among other things, that one Frizzell was employed as a hired man during the partnership of John Parker & Co., to labor in the tannery; that he was hired and paid by Tarbell, and continued in the same way down to about the 12th of May, 1854, when he received written notices from the plaintiff and Tarbell to quit; that one Allen, a clerk of Tarbell's, kept the tannery accounts and Tarbell's accounts of other business; that after the sale to Tarbell of Parker's interest in the stock, Parker was employed in other business of, and carried on a farm of Tarbell's; that Frizzell after that rendered accounts of the tannery business to Tarbell.

The plaintiff then introduced testimony tending to show that Tarbell paid Frizzell, by an arrangement made between him, Tarbell and Parker, because Frizzell and Parker were not on speaking terms, and that Parker accounted to Tarbell for what he paid him.

The plaintiff requested the court to charge the jury that if they should find the fact that he was the joint owner with Tarbell of the tannery premises, and the active partner in the firm of J. Parker & Co., and as such had the sole charge and control of the business during the continuance of the partnership, and that upon the sale it was agreed that he should have a lien upon the stock in the tannery and a lease of Tarbell's half of the tannery premises, and that he thereafter retained and kept the same possession of the premises as he had during the copartnership, with the additional control of Tarbell's half of the same, that it was a sufficient possession in law to maintain his lien, and he would be entitled to recover; and that if the jury should find from the evidence that the plaintiff took such, and all the possession of the property that from its nature and situation it was susceptible of, that it was in law a sufficient possession, and he would be entitled to recover. The court declined so to instruct the jury, but did instruct them that in order to entitle the plaintiff to recover he must be found to have taken and retained exclusive possession of the property, after the lien was given him; that the question would be, whether, after the sale to Tarbell, and at the time of the attachment, he, Tarbell, or Parker had possession and control; and it would be for the jury to say, from all the facts and circumstances of the case, whether an observer or the creditors of Tarbell on reasonable inquiry would learn such fact that they would be bound to know that Parker had such a lien and had control of the property; if the jury so found, their verdict should be for the plaintiff; but if, on the contrary, under all the facts and circumstances proved, the jury should think a person going there to inquire would, on reasonable inquiry, have been at a loss to know which of the two controlled, and would not have learned such facts, by which he would be bound to know Parker had such lien and control, then Parker had not such a possession as would enable him to recover, and their verdict should be for the defendants.

Parker *v.* Kendrick et al.

To the refusal of the court to charge as requested, and to the charge as given, the plaintiff excepted. Verdict for the defendants.

*G. Rolfe,* for the plaintiff.

*C. M. Lamb* and *D. C. Dennison,* for the defendants.

The opinion of the court was delivered by

REDFIELD, CH. J. The only question in the present case is in regard to the sufficiency of the charge as applicable to the testimony in the case. And in revising the proceedings of the county court, and especially in respect to the phraseology of their instructions to the jury, we do not intend to require any particular *formula.* The question here was in regard to the requisite change · of possession in order to perfect a sale or mortgage of personal property as against the creditors of the vendor or mortgagor.

This case is somewhat different from that of *Hutchins* v. *Gilchrist,* 23 Vt. 82. The property there being upon the land of a third person, and only a constructive possession in any one, and being bulky and incapable of tradition from hand to hand, the court held that upon the sale no actual removal was necessary. And in the present case in one respect a similar question might arise, that is, whether it could become necessary to remove this property upon the mortgage to the plaintiff, or whether, indeed, if before the mortgage the business had been under the exclusive control of the plaintiff, there could be any change so as to give him any more notorious possession. And the plaintiff's requests seem to have reference exclusively to this point. And if the court had charged contrary to those requests, it certainly would have been error. But we do not understand the court to have done so. They only say that after the mortgage the plaintiff must have taken and retained exclusive possession, and that there must have been such a change in the transaction of the business there that upon inquiry those interested could have learned the change of title. We do not understand this to import that it must have been so arranged that a mere looker on could spell this out by his own observation, but only that upon inquiry he could find it out. And

this seems to us reasonable, and that a charge merely in the form of the plaintiff's requests without this qualification would have been objectionable, because it might have led the jury to suppose no change whatever was necessary in the conduct of the business. And we think after the plaintiff took a mortgage of the entire stock the workmen should have been exclusively under his control, and in such a manner as to have known it themselves at least. And if they had known it, then any one interested, making the proper inquiry, could have learned that the business was conducted exclusively by the plaintiff, and this must lead them directly to the plaintiff for further inquiry, when they would at once learn the change of title, and this is all which the charge seems to indicate.

But taking the uncontradicted testimony in the case, it certainly seems to very strongly countenance the other alternative in the charge upon which the jury were directed to find a verdict for the defendants. The very contract of mortgage in terms secures the exclusive control of the business to the mortgagors, with the single exception of "keeping the amount of said stock good, so as not to weaken or impair the security the said Parker may have in the same." In the former part of the writing it is stipulated that Parker shall have the use of the buildings, yard, &c., "*for the purpose of keeping the above stock.*" Taking this altogether it seems to provide either for a joint possession, or a mixed possession in the two, or to speak more accurately, perhaps it does provide for a constructive possession in Parker by a lease of the buildings and an actual possession and control of the entire business by Tarbell, the mortgagor, and this is no sufficient charge of possession. And the other uncontradicted facts seem to confirm this view. Frizzle, the principal workman in the tannery, seems to have been hired and paid, and taken his instructions, if he had any, from Tarbell, for he was not on speaking terms with Parker it is said in the case. And Parker all this time, it is said in the case, was employed on one of Tarbell's farms, and Tarbell's clerk kept the accounts of the concern. This is the defendants' testimony merely, but it is mostly uncontradicted in the detail, and it seems to us to justify the charge given, and if believed by the jury, as from the verdict we are to infer it was, it showed no

legal change of possession whatever. While upon the other hand the jury, under the instructions given, if they had believed the plaintiff's testimony, must have given a verdict for him.

The charge, as given, seems to conform to the decisions of this court, and the illustrations given by the judge do not seem to us objectionable. It is said the jury were not told what reasonable inquiry was. That could only be defined by saying it was such inquiry as a prudent and careful man would make upon a subject of equal importance, in which he was interested, and that is no more definite than the expressions used; *Stephenson* v. *Clark*, 20 Vt. 624 ; *Bonons* v. *Stebbins*, 26 Vt. 659.

The charge in this case certainly excludes the idea that the plaintiff could be said to have the exclusive control and possession of that business, when it was carried on by workmen who were employed and paid by Tarbell, although he did it at the request and for the benefit of the plaintiff, and the plaintiff paid him. This is the possession of Tarbell and not of the plaintiff. The law requires that all such agency and control of the vendor should be excluded, and that is all the charge required, and if the court had explicitly complied with the plaintiff's request, in addition to what they did say, it would not vary the legal effect of the charge, as given. One alternative of the charge is substantially what the plaintiff requested ; that is, if he held exclusive possession of the property, after the mortgage, his title was good. This the charge recognizes. How he held it before the sale is not important.

Judgment reversed.