NOBLE B. FLANAGAN v. HENRY L. WOOD AND SAMUEL M. ST. JOHN.

*Attachment.   Sale.   Change of Possession.*

An actual and visible change of possession must accompany every attachment and transfer of personal property which is at the time in the possession

Flanagan *v.* Wood et al.

of the debtor or vendor, in order to make it valid as against subsequent attaching creditors.

Knowledge by the attaching creditor of a former attachment will not stand in lieu of a change of possession, or suffice to protect the property.

In ordinary cases when the property is in the possession of a third party, notice of the attachment or sale, with a request to the party in possession to hold it for the officer or vendee, stands in the place of, and is equivalent to, change of possession.

But if the third party in possession is the mere servant of the vendor or debtor, such notice and request are not sufficient; such possession is no notice to the world that the title of the debtor or vendor has been divested, and does not put his creditors upon inquiry. To give it that effect there should be something external to show to the world the new relation. Mere contract resting between the parties has no such effect.

In the case of the joint possession of personal property by the vendor and vendee, or the debtor and officer, the property will still be liable to attachment upon the debts of the vendor or debtor, if a candid observer would be at a loss to determine which of the two has the chief control and possession of it. In cases of doubt in this respect the law resolves the doubt against the party who should make the change of possession open and visible to the world.

The attaching creditor is not bound to *inquire*, but merely to observe as to the state of the title.

Where land, sold or leased, remains in the actual possession of the vendor or lessor, the deed or lease raises no constructive possession of the personal property on the land in the grantee or lessee as against the subsequent attaching creditors of the grantor or lessor, though in fact the personal property was also sold or leased with the land.

When the vendor and vendee, or lessor and lessee, remain in the joint possession of the land, so that the possession of the vendee or lessee is apparently that of a joint owner, and there is no actual and exclusive possession of the personal property on the land by the vendee, the personalty will also be deemed to be in their joint possession, and an attachment of it as the property of the lessor, or vendor, without a removal, will be void as against subsequent attachments by his creditors.

Application of the foregoing principles to the facts of this case.

TRESPASS for two cows and five yearlings. Plea, the general issue, and trial by the court at the September Term, 1859, in Chittenden county,—BENNETT, J., presiding.

It appeared that upon the 7th day of March, 1859, the plaintiff, as sheriff, attached the property in question, together with

two horses, some hay, and other personal property, as belonging to one Knight, who owned and resided upon a farm in Milton, upon which the property so attached was then in his possession. In addition to the property so attached, Knight also had at the same time upon his farm, one cow and one hog and a quantity of hay, which belonged to him, and also a pair of horses belonging to his father, but in his care and possession. At the time of the attachment one Mills, who was at work for Knight by the month, also resided with his family upon the same farm in a house near that occupied by Knight. At the time the plaintiff made this attachment he designated the property attached, but did not remove it. He, however, directly after he made the attachment, and while he had the property within his control and possession, and before he left the farm, employed Mills to take care of the property, and he thereupon left it on the farm, under this agreement with Mills. When Mills made this agreement he ceased to be Knight's hired man, and it was agreed he was to be paid for his services, thereafter to be rendered, by the plaintiff. At the same time Knight executed to the plaintiff a written lease of the farm for three months from that day, which lease was acknowledged by Knight, but was never recorded. The only purpose for which the plaintiff took this lease was to enable him, as he supposed it would, to leave the property attached upon the farm, without endangering the validity of the attachment.

On the 12th of March, 1859, Knight confessed judgment upon the process under which the plaintiff made his attachment; execution was issued thereon on the same day and the property attached was immediately advertised by the plaintiff for sale on the 28th day of that month, upon such execution.

In the meantime, until the attachment by the defendants, hereinafter described, the cattle attached, and Knight's remaining cow which was not attached, ran together on the farm the same as before the attachment, and were fed together. Mills, by the direction of the plaintiff, was to have the exclusive charge of the cattle attached, and did have such a possession as the facts detailed show, and he usually fed them and Knight's cow together, but sometimes a boy in Knight's employ fed the cow not attached. Both the cattle and horses attached, and the cow and two horses

not attached, were fed from the hay attached and from that not attached, promiscuously. All the cows, including the one not attached, were milked by Mills, and the milk was used in the families of Mills and Knight according to their necessities, but principally by that of Mills. The two horses belonging to Knight's father stood in the same stable where the horses which were attached were kept. Knight had free access to the barn, and sometimes fed the two horses belonging to his father from the hay which was not attached, and sometimes Mills fed them. No other work besides taking care of the stock was done upon the farm between the time of the plaintiff's attachment and that made by the defendants except that Mills and Knight made about four thousand shingles on shares, but it did not appear that the plaintiff authorized the making of the shingles.

On the 17th of March, 1859, the defendant Wood, having placed a writ in his favor against Knight, in the hands of the defendant St. John, who was constable of Milton, went with the latter to the farm where the property in question was, and attached on such writ one of the cows and the five yearlings described in the declaration which the plaintiff claimed to have previously attached. The property so attached by the defendants was then removed by them, and judgment having been subsequently obtained and execution issued in Wood's suit, the property was sold on such execution.

Before making this attachment Wood had seen the plaintiff's advertisement of the proposed sale of the property attached by him, which advertisement merely mentioned that such property had been taken by the plaintiff on execution on the premises of Knight in Milton, and that it would be sold there at public auction at the appointed time. Wood had also before his attachment understood by rumor that Knight's property had been attached by the plaintiff, and that the latter had taken a lease of Knight's farm and had left the property attached upon it. Wood did not know that such lease was not recorded. Wood had seen Mills drawing wood with Knight prior to the plaintiff's attachment, and at the time Wood's attachment was made he supposed Mills was still Knight's hired man. At the time the defendants made their attachment, the boy employed by Knight

was at work at a box, with a saw and hammer, in the barn where the property attached was found by the defendants, and two of Mills' boys were there at the same time. Knight and Mills were at that time at work together, making shingles in the woods, about a mile from the barn. It appeared that Mills did not notify the defendants of the attachment made by the plaintiff, and of the lease and his charge of the property, until after the defendants had made their attachment, but that he did give them such notice while they were in the act of removing the property, but after they had already removed it from the farm.

The plaintiff took no other possession of the farm, or of the property in question, than as above detailed, and everything remained after the plaintiff's attachment as it was before, except as before stated, until the time when the defendants' attachment was made.

Upon the trial of the case, the only question of law made by the defendants was, whether upon the foregoing facts, there had been such a change in the possession of the property attached by the plaintiff as to enable him to hold it against the attachment and subsequent levy and sale on Wood's debt, and the court, *pro forma*, held that there had been such a change, and rendered judgment for the plaintiff for his damages and costs, to which the defendants excepted.

*H. B. Smith*, for the defendants.

*Geo. F. Edmunds*, for the plaintiff.

ALDIS, J. The doctrine that an actual and visible change of possession must accompany every attachment and transfer of personal property was early adopted in this State, and has been steadily adhered to  It has been treated as our settled policy, and the business habits of our citizens have been conformed to it. Under our system of attachment, its practical application is of frequent occurrence, and numerous decisions of our courts have defined and illustrated its operation. From a rule of law so long settled and so well understood and relied upon by the community, we are not at liberty to depart. The decisions in

Flanagan *v.* Wood et al.

this State must therefore be our guide, and we can derive but little aid from the decisions which, in other States and in England, have materially qualified or altered the law in this respect.

The reasons upon which our policy was founded are admirably set forth by Judge PRENTISS, in *Weeks* v. *Weed*, 2 Aik. They are, first, to diminish fraudulent sales, in fact, by preventing the debtor from securing a benefit to himself by depriving him of the possession of the property; and secondly, to prevent the public from being misled to give a false credit to the former owner, who, by continuance in possession after a sale, would appear to the world as the real owner.

This principle has been applied to all transfers, (such as sales, pledges, mortgages and assignments,) and all attachments of personal property.

There must be a substantial and visible change of possession to protect the property from subsequent attachment. Knowledge of the former attachment by the creditor will not stand in lieu of a change of possession, or suffice to protect the property.

The rule is peremptory and universal in its application to all property in the possession of the debtor at the time of the attachment or transfer. But a distinction has been made between property in the hands of the debtor, and property in the hands of a third person, at the time of the attachment. Where the chattels sold or attached are in the hands of a third person, no visible change of possession is required, provided the vendee or creditor gives notice to such third person of his purchase or attachment. This decision was first made in *Barney* v. *Brown*, 2 Vt., and has been repeatedly affirmed; 2 Vt. 555; 5 Vt. 231; 4 Vt. 464; 8 Vt. 344; 16 Vt. 580; 13 Vt. 418 and 558. The opinion of Judge COLLAMER in *Pierce* v. *Chipman*, 8 Vt. 344, shows very fully the ground of the distinction. Possession of either real or personal property by a third person is notice to the world that the title of the former possessor has been transferred; and purchasers or creditors dealing with the property are put upon inquiry, and are affected with knowledge of all the facts which by reasonable inquiry they could ascertain. Hence, when the property is in the possession of a third person there is an obligation upon a subsequent attaching creditor to inquire as to

22

the ownership; and he is not allowed to rest content with mere observation, and, if there is no visible change of possession, to attach.

The possession *by a third party*, with notice of the transfer or attachment, thus stands in place of a visible change of possession, because *such* possession is notice to the world of some change of ownership and puts creditors upon inquiry. But when such possession does not carry any such notice to the world, it does not stand in place of a visible change of possession. This is illustrated by the decision in *Sleeper* v. *Pollard*, 28 Vt. 709. The property was in the sole possession of the hired man of the vendor, who was notified by the vendee, in the presence of the vendor, of the sale, and who agreed to take care of the property for the vendee. This was held not to be a sufficient change of possession; for the possession of the hired man was merely the possession of the vendor. When *the known servant* of the vendor remains in possession, and there is nothing visible to indicate a change of title, it appears to the world just the same as if *the vendor himself* remained in possession. There is nothing to put one on inquiry. In this case, too, it is to be observed that the possession of the servant was not held to be the possession of the master because it was inconsistent with his duty as a servant to agree, or because he did not legally agree, to take care of the property for the vendee. His agreement was made with the vendee in the presence of his master, and as between the vendor, the vendee and the hired man, the agreement was legal and binding, and he became *quoad hoc* the servant of the vendee with the consent of his master. But *quoad* the world he *appeared* to be in possession as the servant of the vendor, and hence it was held *to be* the possession of the vendor. See also *Stiles* v. *Shumway*, 16 Vt. 435.

There is another class of cases which we must consider, and to which the case at bar is claimed to belong; cases of joint or concurrent possession by the vendor and vendee, or by the debtor and attaching creditor.

*Allen* v. *Edgerton*, 3 Vt. 442, is an early case of this kind, and has often been referred to and approved in subsequent decisions. Allen was surety for Seeley. Seeley owned cloths and yarn in

an unfinished state, and wool, in a factory. He agreed that Allen should have possession of the property, but Seeley should assist in the manufacture and sale of the goods. Allen took possession and conducted the manufacturing for several weeks, but Seeley advised about it. The defendant attached the goods as the property of Seeley. The court charged the jury that a joint possession by Allen and Seeley would render the sale void as to creditors; but that to render it void it must appear that the possession and use of the vendor were of the same description as that of a joint owner. Exception was taken to this clause of the charge. Upon this point, HUTCHINSON, Ch. J., says: " It is not easy to perceive that anything short of this would furnish any evidence that he yet remained the owner. The reason why possession must be changed is to announce a change of ownership, and prevent the former owner from gaining a credit by his continued possession. His laboring about the factory as an underworkman would not have the effect to give him a credit. In such case an important inquiry is, who is at the head, controlling the business ? If a candid observer would find it difficult to determine which of the two had the chief control, that would be a joint possession." In *Hall* v. *Parsons*, 15 Vt. 358, the court, in stating the rule of law, repeat almost the very words of Judge HUTCHINSON, "the important inquiry is, who was at the head, controlling the business. If a careful observer would be at a loss to determine, it would be deemed a joint possession." This case was tried again in the county court, and the Judge, in giving the charge, used the very words just cited, and upon hearing in the supreme court, the language of the charge was approved and sustained; 17 Vt. 272, *Hall* v. *Parsons*. In *Mills* v. *Warner*, 19 Vt. 609, ROYCE, J., in referring to those cases, says : " though there were acts of intermeddling by the vendor, which might amount to a seeming joint possession, yet the purchaser alone had control, and was the visible head and. conductor of the business." In that case the vendor was the sole conductor of the business, and used the property sold without interruption from the vendee, who owned the farm and lived with him, and it was held that the sale was void. In *Stephenson* v.

*Clark*, 20 Vt. 624, the instructions given to the jury in *Hall* v. *Parsons*, are referred to and approved by Judge REDFIELD.

The tenor of all these decisions is the same, viz : that possession by the former owner as a joint owner, is a joint possession ; and that if a careful observer would be at a loss to determine who had the chief control, who was at the head of the business, then it is a joint possession. The rule does not say that then it is his duty to inquire, or to presume a change when it is reasonably doubtful ; but that then, the possession is joint and the sale is void. This is in entire consistency with the long settled rule, that there must be a *substantial* and *visible change* of possession when the property, at the time of the sale or attachment, is in the possession of the vendor. If there is such a change, a careful observer will not be at a loss to determine who owns and has possession of the property. If it is doubtful, the law resolves the doubt against the party who should make the change of possession open and visible to the world. In cases therefore of joint possession of property, which, when sold or attached, was in the hands of the vendor or debtor, the creditor is not bound to inquire. It is sufficient if he carefully observes.

If the result of such observation is, that a third person, and not the debtor or vendor, is in possession, then he must understand that there has been a change of possession, and he is affected with a knowledge of all the facts which by inquiry he could ascertain. But if the result is that the debtor or vendor is in exclusive possession, or is in joint possession with another as a joint owner, or, (which is the same thing,) if he is at a loss to determine whether the debtor or a third person is in the chief possession and control of the property, then he may attach and hold the property as against the former vendee or attaching creditor ; and his notice or knowledge of a former sale or attachment does not defeat such subsequent attachment.

I. Applying these principles to this case, it is claimed by the plaintiff that there was a sufficient change of possession because the property attached was put into the possession of Mills and he agreed to take care of it. .But Mills had been up to the time of the attachment the hired man of the debtor Knight,—living

Flanagan *v.* Wood et al.

on the farm of Knight where these cattle were kept. It is not expressly stated that as a hired man he had the care of these cows and young cattle before the attachment and fed them, but as that is the usual duty of hired men, and as after the attachment he is stated to have milked the cow of Knight's which was not attached and to have fed her and the horses of Knight's which were not attached (*although he had then ceased to be Knight's hired man*), we do not think it an unreasonable inference, that he had the care of and had fed the cows and young cattle now in dispute before the attachment the same that he did after. When therefore he agreed with Flanagan to take care of these animals he only agreed to do what he had been doing as the hired man of the debtor. There was no change in the care and custody of the property visible to the most careful observer. It is not stated that he did in regard to them anything he had not been accustomed to do, or that Knight omitted to do anything that he had been used to do. The cattle attached and those not attached ran together on the farm as before, were fed together by Mills from the hay attached and the hay not attached promiscuously, the cows attached and the one not attached were milked together by Mills and the milk used by the families of Knight and of Mills as they stood in need.

It is said in the bill of exceptions that " Mills by the direction of Flanagan *was* to have the exclusive charge of the cattle attached and *did* have such a possession as the facts detailed show." But the facts detailed do not show, that he had any poseession of the cattle different from what he had before the attachment, or different from what hired men usually have, or different from what he had after the attachment of Knight's cow and horses not attached, or that he kept the cattle attached separate or in any way distinguishable from those not attached.

So too it is said that everything on the farm remained after as before the attachment, " except as above stated ;" but when we look over the exceptions to see what is excepted and above stated that did *not* remain on the farm after as before the attachment, we are unable to find it. We are unable to perceive that Mills did anything in relation to the property attached after the attachment that he did not do before, or that Knight did or omitted to

do anything different after from before; or that anything appeared to show the world that Mills was not the hired man of Knight, or that the ownership of the property was changed.

It is said that Mills ceased to be the hired man of Knight and was to be paid by Flanagan; but this rested wholly in contract between the parties, and the outward appearance of his labor was still that of service to Knight; for he not only took care of the property attached, but of that also that was not attached, the same as before. The possession of a mere servant or hired man is but the possession of the master, and does not like the possession of other third persons put the creditor on inquiry; 28 Vt. 709. To give it that effect there should be some change in the labor, or something external to show to the world the new relation. Mere contract resting between the parties has no such effect. We think therefore that there is nothing in substance, so far as Mills' possession of the property is concerned, to distingush the case from *Sleeper* v. *Pollard*, in the 28th Vt.

There are some considerations which make this case stronger against the plaintiff than the case in the 28th. There the possession of the farm on which the property remained was solely in the hired man; here the hired man is not stated to have had any possession of the farm and could not have had any except for the mere purpose of keeping the property attached upon it, while the debtor had and was intended to have the chief control and management of it during the lease, from the 7th of March to the 7th of June. Flanagan could not have intended under a lease for that short time to have done the usual spring's work on the farm, or to have excluded Knight from doing it. Again in *Sleeper* v. *Pollard*, the vendor had no beneficial use of the property sold, while here the debtor had some beneficial use of the property; he had all the milk of the cows attached that his family needed, and all that he could have from the young cattle was their growth, for they were fed on the hay attached and not attached without distinction, and precisely as they would have been if not attached. It is said by COLLAMER, J., in *Pierce* v. *Chipman*, and approved by BENNETT, J., 23 Vt. 87, that the possession and *beneficial use* of the property by the vendor after the sale is *conclusive* evidence against it. Indeed it is the policy and very

foundation of this doctrine of the law to prevent, what it is the object of fraudulent conveyances to secure, the beneficial use of the property to the vendor or debtor. The operation of this principle in cases of attachment may be hard upon the debtor, and require perhaps legislative relief, but the principle is too well settled to be now disturbed.

II. It is also claimed by the plaintiff that the lease changed the possession of the property on the farm. This leads us to inquire how far the actual or constructive possession of land may dispense with a removal of personal property situate upon it, in case of sale or attachment.

A deed or lease of land conveys the legal *right* of possession, but does not necessarily change the possession from the grantor to the grantee. This consideration should be borne in mind in examining those cases where the change of possession of personal property is sought to be established, not by any actual taking, but by construction through possession of the land on which it is situate.

1. If the grantee take actual and exclusive possession of the land the personal property on it upon purchase is of course in his possession, and no removal is necessary. This principle is too obvious to require a citation of authorities. *Burrows* v. *Stebbins*, in 26 Vt. 663, was really such a case; and so upon one view is *Hooper* v. *Wilson*, 12 Vt. 656.

2. If the grantor buy land not in the possession of another, though he do not take actual possession, still possession by construction follows the right; and if he buy personal property situate on the land, by his constructive possession of the land he also acquires constructive possession of the personalty, and no removal is necessary. *Wilson* v. *Hooper*, 12 Vt. 656. This applies to all wild or unoccupied land, and to land left vacant by the grantor.

3. If one sell personal property situate on the land of a third person, who agrees to keep it or allows it to remain on his land for the benefit of the vendee, the vendor after that having no ostensible occupancy of the land or control of the property, such property is held to be in the possession of a third person, and no removal is necessary. *Merritt* v. *Miller*, 13 Vt. 416; *Potter* v. *Washburn*, 13 Vt. 558.

In *Hutchins* v. *Gilchrist*, 23 Vt. and *Sanborn* v. *Kittredge*, 20 Vt., although the property was on the land of another without his consent or agreement still no removal was held necessary; but these cases are exceptions to the general rule and stand on peculiar grounds; viz : that the articles were ponderous and difficult of delivery or removal in the ordinary way, were on the land and in the constructive possession of another, and there was no beneficial use, apparent control or actual possession in the original owner to mislead the public.

4. But where the land sold or leased remains in the actual possession of the vendor or lessor, there no constructive possession of the personal property on it can be raised for the aid of the vendee or lessee against such actual possession; for this would make the constructive possession more potential than the actual and apparent one.

So where the vendor and vendee, or the lessor and lessee remain in the joint possession of the land, the same rule as to change of possession of personalty applies as in the joint possession of personal property alone ; viz: that if the possession of the vendee or lessee is apparently that of a joint owner, and there is no actual and exclusive possession of the personal property by the vendee, the personal property on the land will be deemed to be in their joint possession also, and a sale or attachment of it without removal will be void.

This is recognized in *Stephenson* v. *Clark*, 20 Vt. 624, though the case was remanded because the evidence tending to show actual possession by the vendee was not left to the jury.    *Mills* v. *Warner*, 19 Vt. 609 ; *Stiles* v. *Shumway*, 16 Vt. 435.

The recent case of *Parker* v. *Kendrick*, 29 Vt. 388, is an authority to the same point.    Parker and Tarbell were partners and joint owners of a tannery and its stock, Parker having the sole and exclusive management of it.    Tarbell bought of Parker his half of the tannery stock, gave him a note of one thousand and fifty dollars, and a mortgage of the stock in the tannery to secure the note.    The mortgage provided "that Parker might have the use of the tannery for the purpose of holding possession of the stock ;" but Tarbell "reserved the right to carry on the tannery in any way he might choose by at all times keeping the stock good so as not to impair Parker's security."    The evidence of the plain-

tiff tended to show Parker in exclusive possession after mortgage ; while that of the defendants tended to show a joint possession by Tarbell. The charge of the county court was in one respect more favorable to the plaintiff than the rule of law requires, as it seemed to take the ground that if Parker had such a possession, though seemingly joint with Tarbell, that one by *inquiry* could ascertain his claim, it would be sufficient ; but as the verdict was for the defendant, there could be no exception on that ground. But the remarks of REDFIELD, Ch. J., in his opinion, as to the effect of a mere lease and a joint possession after, seem to us directly applicable to the facts of this case. After stating the facts he says : "This seems to provide for a joint possession, or a mixed possession in the two, or for a *constructive possession* in Parker *by a lease of the buildings*, and an actual possession and control of the entire business by Tarbell, and this is no , ufficient change of possession."

So in the case at bar, Flanagan took a lease, not with the intent and for the purpose which the lease on its face expresses, "to use and occupy it as a farm," but as the bill of exceptions states "to enable him, as he supposed, to leave the property attached in safety on the farm and *with no other intent nor for any other purpose.*" The leases to Parker and Flanagan were for precisely similar purposes. Knight remained on the farm, occupying it apparently precisely as before. Flanagan took no possession of the farm by himself. Mills who had been Knight's hired man, is not said to have taken any possession of the farm for Flanagan, nor does he appear to have done anything on the farm either different from what he was used to do as the servant of Knight, or indicative in any way of a possession by or of a service for Flanagan.

But granting that he was in possession under Flanagan, he was obviously in possession only jointly with Knight—a possession wholly undistinguishable from Knight's and with nothing to show to the world that Knight did not remain as he had been at the head of the business.

Upon all the facts indeed it seems to us rather an apparent exclusive possession by Knight, than joint by him with Mills. Against such an actual possession by Knight neither a lease nor even a deed on record could operate to give to the lessee or

grantee any constructive possession of personal property on the farm.

As therefore the plaintiff had no sufficient possession either by himself or his servant, nor any sufficient constructive possession by the lease, we must hold the judgment of the county court erroneous.

As to the other point made by the plaintiff, we think the law too well settled in this State to require any elucidation, that if a public officer in the outset does legally take possession of property attached, yet if he afterwards allow it to pass into the hands of the debtor, the attachment is void as to a subsequent attaching creditor.

Judgment reversed, and judgment for the defendants to recover their costs.