## EDWIN C. WHITE *v.* ORSON MILLER.

*Sale.    Change of Possession as against Creditors.*

Prior to March, 1869, A. and B., merchants, assigned their goods and property to the plaintiff, for the benefit of their creditors. The plaintiff sold a portion thereof, and paid a percentage, and on a debt due C., the percentage was $50. On the 6th of said March, the plaintiff sold the remainder of the goods to D., a brother of A. and B., who agreed to pay C. said $50. The plaintiff and E. then signed a 500 dollar note to F., to enable D. to go into business in the same store his brothers had occupied; and he carried on the business there till November 6, 1869. During that summer and fall, up to that date, A. peddled goods from D.'s store, with D.'s horses and cart. It was optional with A. to have pay for his work, or an interest with D, in the business ; and he chose the former. On the last-named day, D. closed business, and A. stopped peddling for him, and went out of his employ. About that time, the goods in the store were put into the cart which A. had been using, and on that day D. transferred said goods, and the horses and cart, to the plaintiff; and it was then agreed that D. should go to N. Y., and buy a bill of goods with his own, or A.'s, funds, and send them to the plaintiff; in consideration of all which, the plaintiff agreed to pay said $50, said 500 dollar note, and $126 to E. ; and at the same time A. agreed to peddle said goods, and pay the plaintiff from the proceeds thereof, sufficient to pay said claims, and to account to D. for the balance. D. purchased the goods in N. Y., and A. took them, and also the goods in the cart, and went to peddling. In about three or four weeks, C. attached the goods on his claim, and the plaintiff paid it, and released the goods. On the 11th and 14th of December, 1869, the defendant, as sheriff, attached the goods, which A. was still peddling, on two writs in favor of D.'s creditors. The plaintiff thereupon brought this suit, and replevied the goods, and sold them to pay the claims which he had assumed ; which took the whole proceeds thereof. *Held,* that the county court did not err in refusing to hold, *as matter of law,* that the change of possession was not sufficient to protect said goods from attachment by D.'s creditors.

REPLEVIN.   The general issue was joined on the plea of not guilty, and tried by the court, September term, 1872, Ross, J., presiding.   The court found the following facts :

" Some time prior to March, 1869, Byron O. Cheney and Carlos E. Cheney had been in business as merchants, at Eden Corner, and had assigned their property under the state laws to the plaintiff for the payment of their debts.   The plaintiff proceeded under the assignment to sell the goods, and pay a percentage on their debts.   This percentage was such that $50 was to be paid by him to Brainard & Bro. whom the said Cheneys owed.   About March 6, 1869, the plaintiff sold the remainder of the goods and property to Hanson T. Cheney, a brother of the said Byron and Carlos, and the said Hanson agreed to pay said $50 to Brainard & Bro.   On the 6th of March, 1869, the plaintiff and James Brown signed a note to one Works for $500, payable in one year, to enable the said Hanson to go into the mercantile business, at

10

Eden Corner, in the store which had been occupied by the said Byron and Carlos ; and the said Hanson carried on the business there till November 6, 1869. The said Byron, during that summer of 1869, and up to November, had been peddling, and had had his team and goods of the said Hanson. It was at said Byron's option to take the goods and sell them, and be paid for the work, or to take an interest in the profits of the business with said Hanson. He concluded to receive pay for his work. November 6, 1869, said Hanson closed up business in his store, and said Byron stopped peddling for him, or in his employ. At that time, or just before, the goods which the plaintiff replevied, except a bill that was afterwards bought in the plaintiff's name, and paid for either by said Hanson or said Byron, were removed from the store in which said Hanson had been doing business, to the peddler's cart which said Byron had been using. On Sunday, November 6, 1869, these goods, with the horses and peddler's cart, were transferred by said Hanson to the plaintiff, and at the same time it was agreed that said Hanson was to go to New York, and buy and pay for a bill of goods, either from his own funds, or from funds furnished by said Byron, and send them to the plaintiff. In consideration of this transfer of the goods, cart, and horses, and of the purchase of the bill of goods in New York, the plaintiff agreed to pay the $50 to Brainard & Bro., the $500 note to Works, and a debt to said James Brown, of about $126.; and at the same time said Byron agreed to take said goods, and the team and peddler's cart, and also the goods to be purchased in New York, and sell them out, and pay over from the proceeds thereof sufficient money to meet the above named debts ; and if it took the whole of the net proceeds to do this, that was to be the end of the transaction. If anything was left, said Byron was to account therefor to said Hanson. Immediately thereafter, on the following Monday or Tuesday, said Byron took possession of the goods, which, up to that time, had remained in the peddler's cart, and of the team and cart, under said arrangement and agreement, and went to selling the goods, and continued so to do three or four weeks, when the goods were attached by Brainard & Bro. The plaintiff paid that claim, and released that attachment.

" December 11, 1869, the defendant, as sheriff, attached the goods on a writ in favor of Mitchell, Green & Stevens, against said Hanson, returnable to the May term of Lamoille county court, 1870, demanding $500, and on the 14th of said December he attached them on a writ in favor of Henry L. Caldwell & Co. against said Hanson, returnable to the same term, demanding $300. Nothing was shown whether said suits were ever entered

in court and prosecuted to judgment or not. The goods so attached, and which the plaintiff replevied, were all from the goods transferred to the plaintiff on the 6th of November by said Hanson, and from the bill purchased for him, and in his name, by said Hanson, in New York, and which had been received by said Byron, and were all in the possession of said Byron at the time they were attached. The plaintiff, learning of said attachments, immediately notified the defendant that the goods belonged to him, and demanded that they should be delivered to him. The defendant refused to give the goods and property up to the plaintiff, and the plaintiff thereupon replevied the same in this suit, and proceeded to sell the same, and discharge the debts aforesaid, which he assumed to pay and discharge when the goods were transferred to him.

"It was not claimed that any balance remained after selling the goods and property replevied and discharging these debts, which would be going to said Hanson.

"The defendant claimed that, inasmuch as before November 6, 1869, said Byron had been peddling, and having his team and goods of said Hanson in the manner before stated, the arrangement of that date between him and the plaintiff, and between said Hanson and the plaintiff, and the taking of possession subsequently by said Byron, of the goods and property under that arrangement, did not, in law, amount to a sufficient change of possession thereof, to prevent the same from being attached and held as the goods and property of said Hanson."

The court held, upon the foregoing facts, that there was a sufficient change of possession, and rendered judgment for the plaintiff to recover one cent damages, and his costs ; to which the defendant excepted.

*Brigham & Waterman* and *H. C. Wilson*, for the defendant, contended that there was not a sufficient change of possession to prevent the property from being attached and held by the creditors of the said Hanson, and cited *Allen* v. *Edgerton*, 3 Vt. 442 ; *Harris* v. *Langdon*, 5 Vt. 231 ; *Hall v. Parsons*, 15 Vt. 358; S. C. 17 Vt. 271 ; *Stiles* v. *Shumway*, 16 Vt. 435 ; *Mills* v. *Warner*, 19 Vt. 609 ; *Stephenson* v. *Clark*, 20 Vt. 624 ; *Sleeper* v. *Pollard*, 28 Vt. 709 ; *Parker* v. *Kendrick*, 29 Vt. 388 ; *Flanagan* v. *Wood et al.* 33 Vt. 332 ; *Houstin* v. *Howard*, 39 Vt. 54.

*Powers & Gleed,* for the plaintiff.

In this species of replevin, the question of *title* is involved. *Sprague et al. adm'rs.* v. *Clark,* 41 Vt. 6. The plaintiff had possession when the defendant took the goods by an attachment, and the plaintiff's possession is sufficient evidence of title, unless the defendant can show a better one. An attachment of goods is no evidence of title to them, or of any right to take them, unless the defendant goes further and establishes a *cause of action* upon which he acts. The defendant, under his process, is authorized to take the property of H. T. Cheney. Now, unless the creditor in this attachmenth has a debt or cause of action against Cheney, the taking is unlawful, and he has no *title,* even against Cheney. The plaintiff has good title to the goods as against Cheney. The assignment to him was made in good faith and on good consideration. A judgment for a return of the goods to the defendant, is conclusive of the plaintiff's title. Suppose the creditors in the attachment fail in their action against Cheney, who then has title to the goods? Clearly, as between the plaintiff and these creditors, the latter must show a superior right to the property, by having a judgment rendered, or a cause of action which will entitle them to condemn the goods. The defendant standing alone on legal process, must justify fully, the same as in trespass.

The plaintiff is a *bona fide* creditor of Cheney; hence the defendant has no superior equities; the plaintiff obtains possession of the property, and nobody can dispute the validity of that possession, except *creditors.* The plaintiffs in the attachments do not prove themselves *creditors* of Cheney.

The change of possession was sufficient. If the plaintiff had kept the goods for sale at the store, and put in charge a servant of the former owner, a false credit might be induced, and the case brought within the rule laid down in Flanagan's case. Nobody can raise the question as to the change of possession, except innocent purchasers or *creditors.* The defendant does not show that the parties making the attachment are creditors.

The opinion of the court was delivered by

BARRETT, J. As the case is stated, the only point of error claimed by the defendant is, that the court did not hold, as matter

of law, that there was not sufficient change of possession of the property between the plaintiff and said Hanson, to entitle the plaintiff to hold it against attachment by Hanson's creditors. The plaintiff's title as against such creditors, was not controverted on any other ground. The transactions between the parties, as set forth in the case, seem to come short of constituting such a failure or lack of change of possession, as would be decisive against the plaintiff, *as matter of law*. They seem rather to bear as matter of evidence on the question of such change. If they had been proved before a jury, the question of sufficient change would still have been necessarily submitted to the jury, under proper instructions as to the rule and requirements of the law in that respect. There was change of possession in fact. The question was whether it was *sufficient*. It would seem that the court, as well as a jury, would have been warranted in finding, by inference from the facts stated, that the requirements of the law as to change of possession, had been answered. This being so, the judgment rendered implies and evinces that the court did so find.

It may be well to note, that none of the goods in question had been in said Byron's hands while he was in the employ of Hanson. They passed to his hands two or three days after he had ceased to be in Hanson's employment, and after Hanson had ceased business, and after Byron had entered into an engagement of service for the plaintiff, to take and sell the goods. The goods bought in New York were never in possession of Hanson, or of Byron as the servant of Hanson. Byron had thus been holding the goods under the plaintiff four or five weeks, when they were attached by the defendant. The various circumstances, and the relations sustained by the parties in their connection with the transactions, might well be regarded as very significant of the question of *fraud in fact*. But they are not decisive on the question of sufficient change of possession, as matter of law. The difference between this case and that of *Flanagan* v. *Wood*, 33 Vt. 332, seems very marked. In that case nothing was in fact changed, except that Mills agreed with Flanagan to take care of the attached property, and *then* ceased to be Knights' hired man. The apparent relation of Knights and Mills to each other, and

to the property in question, continued to be the same as before the attachment. Not so in this case. Said Byron had no relation to the attached property, till it went into his hands under employment by the plaintiff. It no longer remained where it had been while owned by said Hanson; nor was it dealt with as it had been while owned by him. All actual, as well as all apparent, possession by him, had ceased for several weeks before the attachment. All that existed to indicate no change of possession, was the fact that said Byron, while he had been in the employ of Hanson, had other goods which he was peddling about the country with the same team. While this would all be proper as evidence, in connection with the other facts, on the question, as before said, it comes far short of constituting, as matter of law, no sufficient change of possession.

As this is the decisive question in the case as it is now before us, we refrain from passing on any others that were debated in the argument. Judgment affirmed.