### JONES LUMBER & MERCANTILE CO. V. FARIS, Sheriff.

1.   Where the court, at the close of the testimony, directed a verdict, such ruling if erroneous, is an error of law occurring on the trial, and, if properly excepted to, may be reviewed in this court without a motion for a new trial.

2.   To make a good levy under an attachment, the officer must take actual possession of the property attached, as far as, under the circumstances, this is practicable.   He must put himself in position to, and must in fact, assert and enforce a dominion over the property adverse to

and exclusive of the attachment debtor, and such property must be in his substantial presence.

3.  To keep such levy good as against a subsequent purchaser of the attached property, the officer must maintain a possession visably adverse to such attachment debtor, as by a custodian, keeping the same under lock and key, or some other equivalent act of exclusive possession and control.

4.  Where the attaching officer, after the levy, left the property attached in the building of the debtor, who occupied and used the room in which such property was left, surrendering the key to him, neither seeing nor giving any attention to the property for three months and a half, there being all the time nothing about the property or its surroundings to indicate that such officer claimed possession of it, *held* that the attachment was abandoned as to third persons.

5.  *Held*, further, that one who, at the end of said three and a half months, purchased the attached property from the attachment debtor, took the same free from the lien of the attachment.

6.  *Held*, further, that such purchaser's rights were not affected by the fact that he knew of the original levy, for the fair and legal inference from the subsequent facts was that such levy had been abandoned.

(Syllabus by theCourt.   Opinion filed Oct. 17, 1894.)

Appeal from circuit court, Edmunds county.   Hon H. G. FULLER, Judge.

Action to recover damages for the conversion of a safe. From a judgment for plaintiff, defendant appeals.   Affirmed.

The facts are stated in the opinion.

*L. W. Crofoot* and *Dudley P. Wayne*, for appellant.

The limits of a strict cross-examination include whatever tends to qualify or explain the witness' testimony or modify any inference resulting from it.   Baird v. Daily, 68 N. Y. 547; 1 Rice Ev. 586; Wait Fraud. Con. § 281; Jackson v. Metzger, 35 Mich. 103.

In order to constitute a valid levy on personal property it is necessary for the officer to so assume control of the goods as to render him liable as a trespasser except for the protection of his writ.   Drake on Attachment, § 256; Odeornl v. Calley, 2 N. H. 66; Morse v. Hurd, 17 N. H. 246; Cooper v. Newman, 45

N. H. 339; Huntington v. Blaisdale, 2 N. H. 317; Naylar v. Dennie, 8 Pick. 198. If the defendant after the levy enters a building where the property is stored and gets possession of it, the attachment lien is not thereby lost. Freeman Exec. § 262; Harrman v. Gray, 108 Mass. 229; Commit v. Brigham, 123 Mass. 248, Shephard v. Butterfield, 4 Cush. 465. Ponderous property need not be removed by the sheriff from the place where it is found. Waples Attach. 176; Patch v. Wessels, 46 Mich. 249; Rogers v. Gilmore, 51 Cal. 309; Gallagher v. Bishop, 15 Wis. 276; Minngray v. Wheeler, 14 Pick. 408.

*C. A. Barron* and *Albert Gunderson,* for respondent.

A witness cannot be cross-examined except as to matters connected with his direct evidence. 1 Green. Evi. 446; Philadelphia v. Simpson, 14 Peters 448; Floyd v. Borard, 6 Watts & Serg. 75. The general course of the examination of witnesses is subject to the discretion of the judge. Moody v. Rowell, 17 Pick. 498. The weight and sufficiency of evidence given at a trial cannot be reviewed without a motion for a new trial having first been made and overruled. Pierce v. Manning, 2 S. D. 517; 51 N. W. 867; Jones v. Farris, 58 N. W. 813. The record must affirmatively show error. Ormsby v. Conrad, 57 N. W. 778; Kent v. Ins. Co. 2 S. D., 300; 50 N. W. 85.

KELLAM, J. Respondent, as plaintiff, brought this action to recover the value of a safe alleged to be the property of, and to have been taken from the possession of, plaintiff by defendant. Defendant justified as sheriff, on the ground that the taking was by virtue of an attachment against one Hopkins, who was the owner of the safe; that plaintiff bought and got possession of the safe while it was so under attachment, and that it had notice of the attachment before and at the time it so purchased. The regularity of the attachment proceedings was not questioned, and it is evident that the case hinged upon the question whether the sheriff held the safe under a valid and effective levy at the time of plaintiff's alleged

purchase from Hopkins.   At the close of the testimony on both sides the court directed the jury to return a verdict for plaintiff for the value of the safe as they should find it.   From the judgment entered on such directed verdict, and apparently without a motion for a new trial, the defendant appeals.  'He assigns as error, among other things, the direction by the court of a verdict for plaintiff.   Respondent contends at the outset that this ruling cannot be reviewed in this court, because no motion for a new trial was made, and cites such cases as Pierce v. Manning (S. D.), 51 N. W. 332, where it is held that the question of the sufficiency of the evidence to support the verdict of the jury will not be reviewed until such question has been presented to the trial court by motion for a new trial. But this is not such a case.   Here the jury has never passed upon the evidence.   The verdict is not the result of their deliberation upon the evidence and its probative force.   It is not their verdict upon a question of fact, but the court's ruling upon a question of law.   The court took the case from the jury, and disposed of it purely as a question of law.   If such ruling was wrong, it was error in law occurring at the trial (Cravens v. Dewey, 13 Cal. 40), and may be reviewed without a motion for a new trial (Mercantile Co. v. Faris [S. D.], 58 N. W. 813). There is nothing before us to indicate whether the trial judge directed the verdict on the theory that no sufficient levy was shown to have been made in the first instance, or that, having been made, the lien of the sheriff thereunder had been lost by his subsequent treatment of the attached property.

First, then, as to the levy.   The sheriff testified:   That in company with the attachment debtor and a Mr. White he went to the house of such debtor, and then and there made a list of the articles, including the safe, which he claimed to have levied upon.   The safe was in an adjoining room.   He did not then go into that room.   After making such list, he took a receipt for the safe from Mr. White, and took the key of the room in which the safe was.   The attachment debtor gave notice of his

claim of exemptions, and served a schedule, which did not include the safe. (What became of the attached property, except. the safe, does not appear, and it is not material, as this controversy involves only the safe.) That at or before the time of the appraisal the officer placed a deputy in charge of the room and safe, and so continued him until some two or three weeks later, when the attachment debtor complained that he did not want the deputy there, but said, "if he would remove his man or deputy from the room, that they might leave the safe there as long as they wanted to." That the safe was a large double-door bank safe, with burglar chest, and that it would cost from five to ten dollars to move it. That immediately after this conversation with Hopkins, the attachment debtor, he procured sealing wax, "and sealed the safe up, by dropping the wax "right over the joining of the two doors," and impressing the same with a seal or form, and then gave the key of the room to Hopkins, the attachment debtor. It is unfortunately true that the adjudicated cases upon the question of just what will and what will not constitute a valid levy of either an execution or an attachment are not entirely harmonious. The consensus of modern authorities, however, undoubtedly is that the officer levying an attachment must take actual possession of the property attached, as far as, under the circumstances, this is practicable. He must put himself in position to, and must in fact, assert and enforce a dominion over the property adverse to and exclusive of the attachment debtor, and such property must be in his substantial presence. Drake, Attachm. § 256; Wade, Attachm. § 129. In each of these text-books numerous authorities are cited, from which the rule is drawn which we have attempted in general terms to state. But if, in this case, it is doubtful that what the officer did at his first visit was sufficient to constitute a valid levy, his subsequently, while he was claiming to hold possession by his deputy, and before any other rights had intervened, proceding to formally "seal up" the safe, was such an overt act of exclusive dominion over it as would perfect the levy, if imperfect before.

We come now to consider the subsequent treatment of this safe with a view of ascertaining whether the sheriff continued his possession of it, so as to keep his levy good as against plaintiff, who knew that the sheriff had an attachment, and had attempted to levy upon the safe. As already noticed, the officer, at the request of Hopkins, the attachment debtor, withdrew his deputy, and, after sealing the safe, as before described, he delivered the key to the room to Hopkins, leaving the safe in the room. It is undisputed that within a day or two —and probably that same night—the wax dropped off, removing the only visible evidence of the sheriff's claim to possession, and it so remained, without further attention from the sheriff, more than three months and a half. He testifies that during all that time, and until after April 15th, when plaintiff removed it under its alleged purchase, he did not see the safe. He never again saw it in that room, or gave any attention to it, either by himself or by a deputy or keeper. He had no key to the room, and could only have gotten in where the safe was by the indulgence of the attachment defendant, Hopkins. There is also uncontradicted evidence in the case tending to show that during this time Hopkins, the attachment debtor, either with or without the knowledge of the officer, used the safe substantially in the same manner as before the levy. There are cases in which it is held that allowing the attachment debtor or members of his family to use attached property would not necessarily release the levy; but in all of such cases, so far as we have observed, there was a keeper immediately representing the attaching officer, who was in the possession and control of such property. Such use was under the immediate supervision of the keeper, and the goods could not have been removed or diverted without his knowledge. Baldwin v. Jackson, 12 Mass. 131; Train v. Wellington, Id. 496. The facts before us in this case so nearly correspond with those in Bagley v. White, 4 Pick. 395, that we quote from the opinion of the Massachusetts court its views of the legal effect of such

facts: "In the case at bar the plaintiff seemed to think that he should not want a keeper, and that the goods would be safe in the debtor's store, where they were put after they were attached. That would have been sufficient if the plaintiff had kept the key. But he had not the key, nor any control of the shop, nor any possession by any one as his servant, for thirty or forty days after the goods were put there. On the contrary, the debtor had the actual possession of the store in which the goods were put, and paid the rent for it. But it is contended that the defendant knew that the plaintiff had attached the goods, and so the attachment should be considered to be void as against him. All the evidence upon this point is that the defendant knew that, some thirty or forty days before, the plaintiff had attached the goods, and that they had been afterwards in the possession of the debtor, as has been before stated. The inference to be drawn from these facts is matter of law, and is the subject of this inquiry. If it should be that the lien originally created had been continued, then the defendant might be said to know that the goods were under attachment; but, if not then it could not be said that he knew they were. The facts would rather warrant the assertion that the defendant knew that the attachment which had been made had for some reason or other been discharged, than that he knew the original attachment subsisted when he undertook to attach." See, also, in the same line, and to the same effect, Sanderson v. Edwards, 16 Pick 144. In Flanagan v. Wood, 33 Vt. 332, the contest was between a prior and a later attaching creditor. The court said: "There must be a substantial and a visible change of possession to protect the property from subsequent attachment. Knowledge of the former attachment by the creditor will not stand in lieu of a change of possession or officer to protect the property." The same doctrine is laid down as the law upon this subject in Drake, Attachm. § 292a. In this case, after about the 24th day of December until the middle of the April following, nothing appears to show that

the officer had possession of or control over the safe. He had no receipt from a third party. He had no keeper in custody. He had no key to the room in which it was. He had no notice upon the safe, indicating that he even claimed possession; nor did he even go near it himself. The safe itself, and all its surroundings, were as innocent of anything to indicate that it was in the custody of the sheriff as before it was attached. Studying the uncontroverted facts in the light of the rule which seems well established, their legal effect was an abandonment of the levy, because such is the legal inference. It being an inference which the law itself draws from the facts, it was not a question for the jury. The trial court was right in recognizing and acting upon it by directing the verdict. The judgment is affirmed.

FULLER, J., took no part in this decision.