JAMES F. How, Respondent, *vs.* PHILIP C. TAYLOR, Appellant.

1. *Fraudulent conveyances—Personal property—Change of possession—Bailees, notification to.*—A sale of personal property then in the hands of a bailee, followed by a notification to the bailee of such sale, is a sufficient change of possession as against the creditors of the vendor.

*Appeal from St. Louis Circuit Court.*

*Bakewell & Farish*, for Appellant.

There must have been *"actual"* (that is not merely virtual or constructive,) and continued change of possession. (W. S., 281, § 10.)

The California statute is ours precisely, as now amended. (Compiled Laws of California, 201, § 15 ; Bacon vs. Scannell, 9 Cal., 271 ; Stevens vs. Irwin, 15 Cal., 503 ; Engle vs. Marshall, 19 Cal., 320 ; Woods vs. Bugby, 29 Cal., 479 ; Claflin vs. Rosenberg, 42 Mo., 447.)

*Moss & Sherzer*, for Respondent.

There having been a *bona fide* sale by the owner, who was in a distant State, to plaintiff, of the paintings in dispute, then in the hands of a naked bailee, and the bailee having been informed of such sale, there having .been no subsequent exercise of ownership over said property by said vendor, is sufficient to constitute such change of possession as contemplated in Sec. 10 of Statute on Fraudulent Conveyances. (Linton vs. Butz, 7 Barr., 89 ; Pierce vs. Chipman, 8 Vt., 334 ; Butt vs. Caldwell, 4 Bibb., 458 ; Harmon, *et al.* vs. Anderson, *et al.*, 2 Camp., 243 ; Sto. on Bail., § 282 ; Claflin vs. Rosenberg, 42 Mo., 450.)

VORIES, Judge, delivered the opinion of the court.

The defendant, as Sheriff of St. Lous County, levied on and siezed, by virtue of an attachment in his hands against the property of John How, four pictures or paintings estimated to be of the value of one thousand dollars.     The plaintiff claimed to be the owner of the paintings, and brought this suit in the nature of a replevin suit to recover the same.

The defendant in his answer denied plaintiff's right or title to the paintings, and charged that the paintings belonged to and were the property of John How, (plaintiff's father) and justified under the attachment against his property.

The suit was brought in October, 1871. The case was tried by a jury. The evidence offered by the plaintiff, was to the effect that John How, the plaintiff's father, in August, 1869, was the owner of the paintings in controversy, at which time he left Missouri, and went to Montana Territory, where he has ever since remained; that before he left he had the paintings put up in the Mercantile Library Hall, to be there kept by said Library Company for him ; that they were hung up against the wall of said Hall, where they remained until in June, 1871, when for a valuable consideration they were sold to plaintiff; that a bill of sale was executed by said John How, by which the paintings were conveyed to plaintiff, at the bottom of which bill of sale was the following : "The Secretary of the Library Company will please deliver the above invoice of pictures to James F. How, of St. Louis. Virginia City, M. T., June 15th, 1871." That this order and bill of sale were shown to the actuary of said Library building and Company, who had charge of said Hall and pictures ; that a written note was sent to the said actuary by plaintiff, informing him that the pictures belonged to plaintiff, and that he was not in a position to keep them, and inquiring if he could probably sell them to the Library Association; that he also saw the actuary in person, on the subject of selling the pictures to the Company, telling him that he had bought them, and would have a bill of sale of them, that it was on the way here; that the paintings were still left hanging on the wall of the Library building, until they were seized by the defendant on the 21st of Sept., 1871 when the actuary of the Library Company gave plaintiff notice of the fact ; that John How when he left here was insolvent.

The evidence for the defendant in some matters contradicted the evidence of plaintiff. One Dyer, the actuary of the Company, testified, that plaintiff came to him in the spring of

38—vol. lii.

1871, and asked him if the Library Association wished to buy pictures; that he told plaintiff that he would inquire of the Board, and that about August he notified the Board that plaintiff wanted to sell the pictures; that the Board said they would require a bill of sale of John How, and that witness required a bill of sale from plaintiff; that plaintiff said he had full power of attorney from his father to act for him to sell pictures. On cross-examination witness stated, that plaintiff notified him, that the pictures were transferred to him, that he did not say he had bought them, but that they had been transferred to him; he also stated, that plaintiff had written him a letter, in which he notified him of the transfer, ·and said that the "pictures now belong to me, and not being in a position to keep them, he wished to sell them." The witness stated further, that the pictures would have remained where they were, whether plaintiff had demanded them or not, that he had never recognized plaintiff as the owner of them. The papers in the attachment suit were offered in evidence, and the evidence closed. The above is substantially the evidence in the case.

The defendant then asked the court to instruct the jury as follows :

" If the jury believe from the evidence, that the Mercantile Library Association received from John How the pictures in question, to be safely kept for him, that afterwards being then insolvent and absent from the State, he drew upon his son, James F. How, the drafts mentioned in evidence, which said James F. How refused to accept, because he had no money to pay the same, and no property belonging to his father by which he could raise such money; that said James communicated said fact to his father, whereupon said John How executed and mailed to said James, who duly received the same, the bill of sale offered in evidence, that before he knew of the execution of said bill of sale, said James paid one of said drafts at maturity with money of a third person in his hands, and after receiving said bill of sale paid the remaining drafts at maturity, that the said bill of sale was never acknowledged

or recorded, and that the said Mercantile Library Association did not, up to the date of the levy herein, recognize said James F. How as the owner of said pictures, and agree to hold the same for him, the said James, as sole owner thereof, they will find for the defendant."

2nd. "Should the jury believe from the evidence, that the goods in question were actually sold by John How to his son, James F. How, yet unless they further believe from the evidence, that the sale was accompanied by a delivery in a reasonable time, regard being had to the situation of the property, and was also followed by an actual and continued change of possession of the goods sold, they will find for the defendants."

3rd. "If the jury believe from the evidence, that John How left the pictures in question with the Mercantile Library Association to hold and keep for him, and afterwards purported to sell the same to his son, James F. How, and that the pictures remained in the custody of said Mercantile Library Association up to the date of the levy of the Sheriff, they will find for the defendant; unless they further believe from the evidence, that the said Mercantile Library Association had before said levy, actual notice of said alleged change of ownership, and agreed to hold said goods for said alleged purchaser."

4th. "Should the jury believe from the evidence, that the alleged sale of the pictures in question from John How to James F. How, was made in good faith and for a valuable consideration, yet unless they further believe from the evidence, that James F. How took actual possession of the said pictures, that the change of possession was visible and continuous; and exclusive as against the seller, the said John How, and such as indicated to purchasers at large, that said John How no longer had possession or control of the said goods, they will find for defendant."

The court refused said instructions and gave three instructions on its own motion, and the defendant excepted. The instructions given were as follows: "If there was a *bona fide* sale of the pictures in dispute by John How to plaintiff, and

if, prior to the levy on them by defendant, there was an actual, visible, continued, charge of the possession of the same, then the jury will find for the plaintiff. "

" If the jury believe from the evidence, that the plaintiff did not in good faith purchase the said pictures, and that there was no actual, visible and continued change of possession of said pictures prior to the levy thereon by defendant, they will find for the defendant. "

" If the jury believe from the evidence, that prior to the levy by·defendant on the pictures, the plaintiff notified and informed Mr. Dyer, that he had bought said pictures, and that he was the owner thereof, then there was such change of the possession, as is contemplated by instructions one and two. "

The jury found a verdict for the plaintiff.

The defendant filed a motion to set aside the verdict and grant a' new trial, setting forth as ground thereof the opinions of the court excepted to.

The court overruled said motion, and rendered final judgment against defendant on the verdict. The defendant again excepted, and appealed to the General Term of the St. Louis Circuit Court, where said judgment was affirmed, and from this last judgment defendant has appealed to this court.

The proper construction of the 10th section of the statute concerning fraudulent conveyances is the only matter for the consideration of this court. (1 W. S., 281.) There is no question in this court as to the honesty or fraud of the plaintiff in the purchase of the property, that matter has been submitted to a jury and will not be examined here ; but the question presented is, was there such a delivery and change of possession of the pictures sold to plaintiff, as to make the sale effectual to pass the property in the pictures to him as against the creditors of his vendor, or is there such a want of a change in the possession as to make the sale void as to said creditors ? The statute provides, that " Every sale made by a vendor of goods and chattels in his possession or under his control, unless the same be accompanied by delivery in a reasonable time (regard being had to the situation of the property,) and be followed by

an actual and continued change of the possession of the things sold, shall be held fraudulent and void as against the creditors of the vendor or subsequent purchasers in good faith." Under this statute, where chattels are in the actual and visible possession or control of the vendor, and are capable of being delivered to the purchaser, in order to the validity of the purchase as to the creditors an actual and visible change of the possession must take place and continue in the vendee. The statute in such case can admit of but one construction. Of this character was the case of Claflin vs. Rosenberg, (42 Mo., 439.) In that case the evidence showed, that Strauss was a milliner doing business in St. Louis, that he was a brother-in-law to the defendant, that he had loaned him considerable amounts, and paid out money on his account. That in consideration of these debts defendant gave him a bill of sale of the goods in his store, and turned the same over to the interpleader in the cause, who on the same evening made an arrangement with the defendant, by which he employed him as a clerk for wages. The defendant continued to take charge and control of the store, as he did before the sale, and to the outside world appeared as before the sale to be the owner of the goods, selling them just as he did before the sale. It was properly held in that case, that no such change of the possession of the goods had taken place as was contemplated by the section of the statute above set forth, and that the sale was void as to creditors. In that case the vendor was in the actual, *visible* possession of the goods, the goods were capable of being delivered to the vendee at once, and in order to the validity of the sale as against creditors, the *actual, visible* possession must have been changed, and the change continued. This would be required in all cases where the property is capable of such delivery, and where the vendor is in the actual, *visible* possession and control of the property, and has the ability to make an actual delivery and thereby create an actual and visible change of the possession. In such case for the vendor to remain in the apparent possession of the property as before the sale would be calculated to give him a fictitious credit, and thereby enable him to deceive

and defraud creditors. It is this evil, that the statute is intended to remedy. Numerous cases might be cited in addition to the case of Claflin above referred to, which uphold the principle of that case. But the case now under consideration is not of that character of cases. The vendor in this case resided, and had resided for years, in the Territory of Montana, at least a thousand miles from St. Louis. The plaintiff and the property sold were in St. Louis, and the property was in the possession of a bailee. The vendor did not have the possession of the property, nor had he, so far as the public was concerned, any visible control of the same. The only way that he could control the property was to order his bailee to deliver it to a purchaser, if he could sell it, or otherwise dispose of it. This he did when he sold the property to plaintiff. He gave the plaintiff an order for the property, the plaintiff notified the bailee that the pictures had been transferred to and belonged to him, and offered to sell the pictures to the Library Association, and the vendor never pretended to exercise any acts of ownership or control over the property after the sale. The question is, will these facts constitute such a change of the possession, as is contemplated by the statute. It is contended by the defendant that to change the possession in such cases, it is at least necessary that the bailee should consent to the change of possession, and agree to become the bailee of the purchaser; whilst on the other hand it is insisted, that it is only necessary to notify the bailee of the transfer of the property, and he at once becomes the bailee of the purchaser. In the case of Harman vs. Anderson, 2 Camp., 243, it was held, that "Where the purchaser of goods has lodged an order to deliver with the wharfinger in whose warehouse they lie, * * * the wharfinger is bound to hold the goods as the agent of the purchaser, and this is so without any transfer in his books." Lord Ellenborough says, that "after the note was delivered to the wharfingers, they were bound to hold the goods on account of the purchaser."

The statute of Pennsylvania in reference to fraudulent conveyances is almost exactly similar to ours. In that State the

Supreme Court, in the case of Linton vs. Butz, 7 Barr., 89, in construing their statute, uses the following language: "And where the possession does not follow as well as accompany a transfer, it is a fraud in law without regard to the intent of the parties. It is not sufficient, that the assignor give to the assignee a delivery which may be symbolical, a constructive or a temporary delivery, and then take the articles back into his own possession and keep and use them as before. The learned Judge continues: "The case in hand differs in two particulars from the case cited. Here at the sale the article sold was not in the possession of the vendor, but in the hands of another as bailee, and the vendor did not take it again into his own possession. Hence the property being in the hands of the bailee, the only possession was given of which it was susceptible. *This is all that is required.*"

And in the case of Tierce vs. Chipman, 8 Ver. 334, it is held, that where property at the time of sale was in the hands of a bailee, who was informed by the vendor and vendee of the property being sold, this is a sufficient change of possession to protect it from the creditors of the vendor. These cases seem to be exactly in their facts like the case now under consideration, and it seems from these cases, that it is not required that the bailee should consent or agree to be the bailee of the purchaser, but that all that is necessary is, that he should be notified of the transfer of the goods, and that he at once becomes the bailee of the purchaser, and, if the vendor uses no further acts of ownership over the goods, the possession is changed so as to protect the property from the creditors of a purchaser of the vendor. The case of Butts vs. Caldwell, 4 Bibb., 458 is to the same effect as the cases before cited. I think that the doctrine contained in these cases is sustained by both authority and reason, and that the object of the statute is fully carried out by the construction therein given. It is however suggested, that as the bailee in this case never recognized the plaintiff as the owner of the pictures, and would not have delivered them to him if they had been demanded, that therefore no change of possession was made or effected. If

this be so, then it would appear that all the possession, that could under the circumstances be given, was given; the mere fact that the bailee refused to deliver the property to a purchaser, or to acknowledge his right to the same, could not affect the rights of the purchaser, or prevent him from being his bailee.

By the first and third instruction asked for by the defendant it was required of the jury, that they should not only find, that the plaintiff had purchased the goods in good faith, but that the bailee had recognized plaintiff as the owner, *and agreed to hold the pictures* as his bailee. These instructions were properly refused. Instructions two and four asked by the defendant may be good law, abstractly speaking, but they were not adapted to the facts of this case, and the whole ground intended to be covered by them was fully covered by the instructions given by the court. The three instructions given by the court, when all taken together, fully and fairly presented the law of the case to the jury; they at least presented it to the jury in its most favorable light for the defendant, and I think in the light of the law as contained in the cases above referred to. Wherefore there was no error committed by the court in overruling defendants other instructions.

Judge Sherwood not sitting. The other Judges concurring, the judgment of the St. Louis Circuit Court is affirmed.