## Case No. 5,987.

HAMILTON v. NATIONAL LOAN BANK.

[3 Dill. 230;[1] 18 N. B. R. 97.]

Circuit Court, W. D. Missouri. 1875.

BANKRUPT ACT — LEGAL AND EQUITABLE RIGHTS OF THIRD PERSONS IN THE PROPERTY OF THE BANKRUPT—SALE OF CHATTELS NOT SET APART.

1. The assignee in bankruptcy takes the property of the bankrupt subject to all legal and equitable rights thereto existing in favor of third persons, at the time of the bankruptcy.

2. This principle applied to a case where the bankrupt sold six out of twenty specific bonds of like character and value, in the hands of a bailee, and received pay therefor before the bankruptcy; and it was held that the rights of the purchaser of the six bonds were superior to those of the assignee in bankruptcy of the vendor.

[Appeal from the district court of the United States for the Western district of Missouri.

[This was a proceeding by H. B. Hamilton, assignee in bankruptcy of the Lexington & St. Louis Railroad Company, against the National Loan Bank of St. Louis and M. W. Withers.]

The county of Lafayette, in Missouri, in April, 1871, subscribed $20,000 to the stock of the Lexington & St. Louis Railroad Company, and to pay for the same executed twenty negotiable bonds of the same date, May 1st, 1871, payable at the same time, with the same rate of interest, for one thousand dollars each, and numbered from 71 to 90, inclusive. By agreement between the county and the railroad company these bonds were placed in the hands of M. W. Withers, in escrow "to be delivered by him to the railroad company upon the completion of its road, ironed, equipped, and in running order, and operated into the city of Lexington, in said Lafayette county, from Sedalia." There was

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

no other condition attached to the delivery of the bonds, and the bonds themselves were fully executed and ready for delivery on the completion of the road to place named. When the bonds were put in the hands of Withers, as the agent or trustee for both parties, he executed to the railroad company a bond conditioned to deliver to said company or its order said twenty bonds of the county on the completion of the railroad to the city of Lexington. The twenty bonds were exactly alike, and only distinguishable from each other by difference in the numbers. Soon afterwards, viz.: On the 29th day of May, 1871, the president of the company sold six of the said twenty bonds to the National Loan Bank of St. Louis for the full value thereof, and received payment therefor, and as evidence of such sale delivered to the bank the above mentioned bond of Withers to the railroad company. In April, 1872, the bank notified Withers that it had purchased of the railroad company six of the bonds in his hands. In April or May, 1872, the railroad was completed to Lexington and the company had fully complied with the condition which entitled it as against the county to the twenty bonds. Withers has ever since been in the possession of the twenty bonds and now holds the same. On the 30th day of May, 1872, one John Reid, claiming to own the same, demanded of Withers "the fourteen bonds issued to the Lexington & St. Louis Railroad Company by the county of Lafayette, dated May 1st, 1871, numbered from seventy-one to eighty-five." The contract of sale by the railroad company to the National Loan Bank of St. Louis of the six bonds above mentioned in the hands of Withers did not designate by number, letter or otherwise, which of the twenty bonds the said bank was to get. Withers had only the twenty bonds in his hands. After the completion of its road to Lexington, the railroad company was put into bankruptcy; and this suit is a contest between the assignee in bankruptcy of the railroad company and the National Loan Bank of St. Louis, as to the right of the respective parties to the six bonds in the hands of Withers purchased by the bank of the company in the manner above described. The case arose in this manner. One Blair sued the railroad company before its bankruptcy in one of the state courts, and garnished Withers. Under the statutes of Missouri (1 Wagner's St. p. 192, § 52; Id. p. 665, § 9; Id. p. 664, §§ 1, 4), the National Loan Bank intervened by means of a proceeding termed an "interplea," and claimed the six bonds in the hands of Withers under its said purchase, which was prior in date to Blair's garnishment. Afterwards the railroad company was put into bankruptcy in the United States district court for the Western district of Missouri, and by the consent of Blair and the assignee in bankruptcy of the railroad company and the National Loan Bank, the case of Blair and the "interplea" of the bank were transferred to said federal

district court for trial and final disposition. Blair's attachment was dissolved by the federal district court, which left the contest as to the six bonds between the bank and the assignee in bankruptcy, remaining. The parties waived a jury and tried the question to the court, and after hearing the evidence the court, upon the issues joined, found for the bank, and entered the following judgment, viz: "That M. W. Withers (who had answered in the proceeding), commissioner of Lafayette county, who has in his possession twenty of the bonds of that county, deliver six of the same to the interpleader, the National Bank of St. Louis, and that the assignee in bankruptcy pay the costs." To reverse this judgment or order the assignee brings the case to this court.

Lay & Belch and H. B. Hamilton, for assignee in bankruptcy.

H. C. Wallace, Ewing & Smith, and J. L. Smith, for National Loan Bank.

DILLON, Circuit Judge. It is very doubtful whether this case is properly before the court upon the appeal of the assignee, or whether any errors of law appear of record properly saved by bill of exceptions or special findings of fact. But as counsel have made no questions of this kind, and have argued the case in this court upon the merits, and as upon the merits it must be affirmed, I will dispose of it upon the assumption that it is rightfully here and that the material facts are those appearing in the statement of the case.

This is a contest between the bank and the assignee in bankruptcy of the railroad company. Before the bankruptcy of the company the bank had purchased of it six of the twenty bonds of the county of Lafayette, then in the hands of Withers. The bank paid the company in full therefor, and the bona fides of the transaction is not impeached. But the company could not then deliver the bonds to the bank because they were in the hands of Mr. Withers, and because it had not then completed its road to Lexington. Afterwards the bank gave notice to Mr. Withers of its purchase of the six bonds, and in April or May, 1872, the company completed its road to Lexington, thus becoming fully entitled to the bonds, as between it and the county. All this occurred before the bankruptcy of the company. The twenty bonds are still in the hands of Mr. Withers, who claims no interest in them, and is ready to abide the orders of the court.

The assignee in bankruptcy relies upon this point, viz: That the purchase of the six bonds by the bank is void because the particular six of the twenty which it purchased were not determined by any description thereof, or by separating them from the residue, and therefore, it is argued, the title or property in the six bonds did not pass to the bank, but remained in the company.

As the bonds were all exactly alike in date, amount, time of payment, etc., there are not wanting respectable authorities that the title or property in six of the twenty would pass without any actual separation of them from the others. Kimberly v. Patchin, 19 N. Y. 330; Russell v. Carrington, 42 N. Y. 118; Young v. Miles, 20 Wis. 615, 23 Wis. 643; Chapman v. Shepard, 39 Conn. 413; Pleasants v. Pendleton, 6 Rand. (Va.) 473; Waldron v. Chase, 37 Me. 414; Warren v. Milliken, 57 Me. 97; Cushing v. Breed, 14 Allen, 380.

The authorities, however, are not harmonious on the point, and will be found very fully collected in the American edition of Benjamin on Sales (sections 78, 81, 308, 318, 355).

It is not necessary to the determination of the present case to decide whether the legal title to the six bonds passed, or could pass, to the bank before the particular six were identified, set apart, or appropriated under the contract.

At the very least the contract between the company and the bank would be valid as an executory agreement on the part of the company, for a consideration actually received, to sell and transfer six of the twenty bonds, in the hands of Withers, to the bank; and this agreement having been made in good faith and the bonds having been paid for by the bank, gave to the bank a right or equity as against the company or its assignee in bankruptcy, to six of the twenty bonds. This right or equity would attach directly to the bonds in the hands of Withers, and could be enforced against the company if bankruptcy had not supervened, and it is not defeated by the subsequent bankruptcy of the company, to whose rights, and to whose rights only, in this respect, does the assignee in bankruptcy succeed. If the railroad company afterwards sold the remaining fourteen bonds to Reid, and designated the fourteen, leaving six, and only six, in the hands of Withers for the bank, this would amount to an appropriation of the six or a separation of them, and the title of the bank would be unquestionably complete.

In short, if the legal title to the six bonds passed to the bank, the assignee in bankruptcy of the vendor has no right to them. But if the absolute property in the six bonds did not pass to the bank the transaction gave to the bank a consummated and specific right or equity to six of the twenty bonds which are yet in the hands of the bailee, and this right or equity is recognized and preserved to the bank by the bankrupt act. Actual delivery of the bonds at the time of the sale is not necessary, for, says Willes, J., in Meyerstein v. Barber, L. R. 2 C. P. 38, 51; "Since the judgment of Lord Wensleydale (then Justice Parke), in Dixon v. Yates, 5 Barn. & Adol. 313, it has never been doubted

that by the law of England the sale of a specific chattel passes the property to the vendee, without delivery." Benj. Sales, § 308; How v. Taylor, 52 Mo. 592; Massmann v. Holscher, 49 Mo. 89. And in equity, "A contract for the sale of chattels, to be afterwards acquired, transfers the beneficial interest in the chattels as soon as they are acquired to the vendee." Benj. Sales, § 81, and cases cited. Frazer v. Hilliard, 2 Strob. 309; Story, Eq. Jur. (10th Ed.) §§ 421b, 421c, 1040.

In the case under consideration the railroad company had already paid the county for the bonds by its stock, and was entitled to the bonds in the hands of the custodian thereof as soon as its road was completed to a given point; clearly it could transfer the beneficial interest in bonds thus held, and it did so by the sale to the bank, if indeed it did not pass the title to them, which became perfect and absolute when the road was finished and operated to Lexington. But whether the bank has the legal title or only the beneficial or equitable title, in either event its rights are superior to those of the company or its assignee in bankruptcy. Affirmed.