LOUIS LAMORE v. HARRIET M. FRISBIE ET AL.

*Sale of homestead—Sunday contracts or payments.*

A man agreed to sell a piece of land on which he lived and which exceeded a statutory homestead. The family moved to another place and the purchaser made payments after the removal, which were accepted, the last being made after the vendor's death to his widow. *Held* that the vendor's devisees could not contest the contract on the ground that it was for the sale of the homestead.

Where a land contract was delivered on a week day, the mere fact that it was dated as if made on Sunday is not material and will not avoid it.

Payments made on Sunday and not returned, but allowed on a final accounting, will not avoid the contract on which they were received as one made in violation of the Sunday laws.

Inability to produce a contract that has been fulfilled does not furnish any conclusive presumption against its existence.

Where a man, after making a contract of sale, leaves a life estate in all his property to his wife, and there is no administration, payments on the contract are good if made to her.

One who is entitled to a full conveyance waives nothing by taking a conveyance from the owner of a part interest in the legal title, and still retains his right to demand the remainder.

Appeal from Berrien. Submitted October 23. Decided November 29.

INJUNCTION to restrain an action of ejectment. Bill dismissed. Complainant appeals.

*Edward Bacon* for complainant. Where a husband leaves the entire life estate in all his property to his wife, a land contract to which he was a party passes to her as personalty (*House v. Dexter,* 9 Mich., 247; *Wing v. McDowell,* Walk. Ch., 175; Pomeroy on Spec. Perf., 314) and her discharge of the obligations of the other party, on his performance, is as valid against any remainderman as if it had been given by the husband, *Jones v. Jones,* 25 Mich., 401.

*A. H. Potter, C. B. Potter* and *Geo. S. Clapp* for defendants. A contract signed on Sunday is void (Rev. Stat. 1846, ch. 43, § 1; Comp. L., § 1984; *Tucker v. Mowrey,* 12 Mich., 378; *Peck v. Cavell,* 16 Mich., 9; *Hall v. Parker,* 37 Mich., 590) and cannot be ratified by subsequent acts, *Day v. McAllister,* 15 Gray, 433; *Ladd v. Rogers,* 11 Allen, 211; *Bradley v. Rea,* 14 Allen, 22; *Cranson v. Goss,* 107 Mass., 440; a contract for the conveyance of a homestead, not signed by the grantor's wife, is void and not enforceable in equity, *Beecher v. Baldy,* 7 Mich., 506; *Dye v. Mann,* 10 Mich., 298; *Mc-Kee v. Wilcox,* 11 Mich., 361; *Ring v. Burt,* 17 Mich., 472; *Phillips v. Stauch,* 20 Mich., 380; *Fisher v. Meister,* 24 Mich., 452; *Wallace v. Harris,* 32 Mich., 398; where a contract is in duplicate, the loss of both copies must be proved before secondary evidence of their contents can be given, *Crane v. Partland,* 9 Mich., 493; 1 Greenl. Ev. (11th ed.), § 558; 1 Phil. Ev. (5th Am. ed.), 485.

CAMPBELL, C. J. Complainant filed his bill to stop an ejectment ·suit and compel a release from defendant of certain lands once owned by Elijah Pratt, deceased, and now claimed by defendant under his will. Complainant sets up a purchase from Pratt during his life-time, and payment in full under it, partly before and partly after his death. When Pratt died in 1852 he ·left a will devising and bequeathing his entire estate for life to his widow Lydia Pratt, and after her death to their adopted children, Clarissa Frisbie and the defendant who is her brother, and who obtained a quit-claim of her interest. Lydia Pratt died in 1863. The ejectment was begun in 1877, and the quit-claim was made just before.

Elijah Pratt purchased the property in question in 1850 of Edward Hart, subject to a mortgage to one Voorhees, for $100. Complainant's claim is that in 1851 Pratt made an agreement in writing to sell the land to him for $800, of which $100 was paid down, and $150 paid June 1, 1852, and $200 and interest paid to Rufus W. Landon, an agent of Elijah Pratt, in June, 1852. The remainder was paid or secured May 1, 1854, partly by the Voorhees mortgage which Lamore had taken up, and partly by executing to Mrs. Pratt a mortgage which was afterwards paid to defendant, to whom she had assigned it. On this settlement, of which a full memorandum was made by Mr. Landon at the time and given to Lamore, Mrs. Pratt executed a warranty deed to Lamore for the expressed consideration of $800, and took back the mortgage just ·mentioned.

In the summer or fall of 1851, while Pratt was still in the place, an arrangement was made for the convenience of an adjoining mill, whereby the owners—two men named Hipp—exchanged six acres or thereabouts of their land for an equivalent out of the land owned by Pratt. This fact is admitted and complainant sets it up as an arrangement made with and for himself, while defendant denies that he had any interest.

At the time of the alleged contract Pratt and his

family occupied the land, which exceeded in quantity a statutory homestead. After he went to California in the fall of 1851 his wife moved back to a farm they had previously occupied in Pipestone, about two miles from the land in question, which is in Berrien. Lamore went into possession in 1851 and has occupied or possessed it ever since.

Pratt's will, though admitted to probate, had appointed no executor, and no administration was ever had under it. Mrs. Pratt remained in the enjoyment of the estate until her death.

The defense, in addition to a general denial of the contract and of most matters set out by complainant, relied at the hearing on the homestead occupation as avoiding the contract, and also insisted that, assuming the memorandum of Mr. Landon to be true, the contract was made on Sunday, and a considerable payment made on another Sunday,—which it is claimed avoided them. It is also insisted that Lamore never owned any interest beyond the life estate of Mrs. Pratt, which ended in 1863. It is also claimed that the contract is not set up or proved with certainty.

With the exception of one or two minor law points the controversy is chiefly one of fact.

The homestead question does not seem to be of any importance. It is true that when the contract was made Pratt was in possession. No homestead had ever been defined out of the larger tract, and the removal of Mrs. Pratt to their old home in Pipestone in pursuance of this arrangement indicates that there was no intention to retain any homestead rights. Payments were made and taken after the removal, and Mrs. Pratt accepted the remainder in 1854, and set up no such claim.

Neither is there any force in the objection that the contract violated the Sunday laws. The evidence does not indicate that any business was done on Sunday, but shows the contract to have been delivered on another

day. The written date is not material. And while there is, we think, no reason to believe any payment was subsequently made on Sunday, yet if it was, the money never was returned, and was allowed on the final accounting.

The contract is not set out in the bill in all its details, but it does appear distinctly what the consideration was, and that it was all paid. The usual course, on closing up such a contract, is not so uniformly in favor of retaining a fulfilled contract as to make it strange that the vendee is not able to produce it. The evidence of Mr. Landon, who drew it, is positive and clear as to all its material contents, and the proof shows that he acted as Pratt's agent throughout during his life, and for the widow subsequently. He reckoned up the amount paid and unpaid on May 1, 1854, and a settlement was made in accordance with the memorandum which has been preserved. We think the case very fully and clearly made out, not only as to the contract and its fulfillment, but also as to the arrangement with the Hipps, which is shown to have been made with Lamore as the interested party, as well as with Pratt.

Under Pratt's will this money belonged to the control of his wife, and payment to her was a good payment. There was no administrator, and no one but the widow to claim any interest in it. *Sutphen v. Ellis*, 35 Mich., 450; *Proctor v. Robinson*, id., 291. On making payment to her, Lamore was thenceforth equitable owner of the land, and entitled to full conveyance and specific performance against the estate. He could waive nothing by taking a conveyance from the owner of a part interest in the legal title. He still retained his right to demand the remainder. There is nothing in the record at all supporting the theory that his rights in the land originated in a purchase of a mere life estate. It is evident to us that he was misled by an erroneous notion that Mrs. Pratt, because she had a right to receive the money, had power to convey the entire fee. But this did not

diminish his right as equitable owner of land fully paid for; and his possession was rightful as the true proprietor. It is not likely that there was any error made in computing the sums due at a time when all was within the personal knowledge of Mr. Landon, who had charge of the business. If there had been any such mistake it must have been trifling, and Mrs. Pratt had full authority to close the account.

We are not informed on what ground the bill was dismissed. The case seems to us very clear, and we have no doubt of complainant's title. We have not found it necessary to resort to any of the testimony of Lamore as to his personal dealings with Pratt, and need not discuss it.

The decree below must be reversed and a decree made in accordance with the prayer of the bill, with costs of both courts.

The other Justices concurred.