## ALBERT WING & SON v. DANIEL P. PEABODY.

*Attachment.    Change of Possession.    Fraud in Law. Agent.    Bailee.*

The plaintiffs sold on credit four chests of tea and one barrel of molasses to B., which were delivered and kept in B.'s grocery store. Soon after, B. sold his grocery business and lease of the store to G., excepting the tea and molasses, which were to remain where they were, B. having control of them. In a short time the plaintiffs repurchased the tea, &c., and entered into an arrangement with G. to keep the same for them in said store. Subsequently, G., without the knowledge of the plaintiffs, sold and gave possession to P., and falsely represented to him that B. was the owner. B. as a favor to the plaintiffs packed the goods to be reshipped to them, and, with their agent, had tried to sell the same; but after the repurchase had never exercised acts of ownership. The goods while in P.'s possession having been attached by B.'s creditor; *Held,* that there was a sufficient change of possession; that G was the agent of the plaintiffs, and as such held the goods for them; that P., although a bailee, was a stranger to the title, and any erroneous information given to or by him could not affect the rights of the plaintiffs.

TRESPASS with a count in trover. Plea, general issue, with notice of justification under process. Trial by court, September Term, 1884, VEAZEY, J., presiding. Judgment for the plaintiffs. The exceptions stated : "The chests of tea had been all opened and more or less tea sold out of each chest. under an arrangement between John Gosselin and Alphonso Bashaw when, or soon after, Alphonso sold out to Gosselin, that Gosselin might sell from the chests as he had occasion. and account to Alphonso therefor." The other facts are stated in the opinion.

*Redington & Butler*, for the defendant.

There was not that open, notorious, and exclusive change of possession, declared to be necessary by ROYCE, Ch. J.,

in *Weeks* v. *Prescott,* 53 Vt. 57. *See Whitney* v. *Lynde,* 16 Vt. 579; *Rice* v. *Curtis,* 32 Vt. 460; *Flanagan* v. *Wood,* 33 Vt. 337. The officer is not bound to inquire beyond the person in whose apparent possession he finds the property. Ross, J., in *Hildreth* v. *Fitts,* 53 Vt. 684. Gosselin was the agent of Bashaw. *Sleeper* v. *Pollard,* 28 Vt. 709; *Flanagan* v. *Wood, supra.*

*E. D. Merrill,* for the plaintiff.

The statute demands an acceptance and reception, but not a removal, of the goods. R. L. s. 982; *Gorham* v. *Fisher,* 30 Vt. 428; *Gilman* v. *Hill,* 36 N. H. 311. There was a sufficient change of possession. *Hunt* v. *Hetch,* 8 Exch. 814; *Currie* v. *Anderson,* 2 El. & El. 591; SHAW, Ch. J., in *Hatch* v. *Bagley,* 12 Cush. 27; *Gardner* v. *Hasland,* 8 How. 599; *Weld* v. *Came,* 98 Mass. 152; *Bullard* v. *Wait,* 16 Gray, 55; *Spencer* v. *Hale,* 30 Vt. 314; *Hall* v. *Johnson,* 20 Pick. 198.

The opinion of the court was delivered by

WALKER, J. The defendant attempts to justify under process the taking of the four chests of tea and one barrel of molasses, declared for in the plaintiffs' declaration as the property of one Alphonso Bashaw, and the question is, were the goods subject to attachment for said Bashaw's debt?

Bashaw bought the four chests of tea and barrel of molasses with other goods of the plaintiffs in April, 1883, on credit, and took them to a grocery store occupied by him in Rutland, and broke the packages and sold some therefrom. In August he sold out his grocery business, stock of goods, and lease of the store, with the exception of the four chests of tea and barrel of molasses, to one Gosselin. Gosselin took possession of the store and goods bought, with the agreement that the goods claimed for in this suit should remain where they were in said store until they were other-

wise disposed of by Bashaw, he having free access to and control of them at all times. After this sale and arrangement the plaintiffs repurchased the goods for a price agreed upon, which was the purchase price, and when the amount remaining in the packages was ascertained, the value was to be credited towards what Bashaw was owing the plaintiffs on account. The plaintiffs, at the time they repurchased the goods by their agent, Egery, notified Gosselin that they had purchased the goods, and that Bashaw, as a favor to them, would pack and reship them to their store in Albany, and requested Gosselin to keep the goods for them ; and Gosselin assented to it, and told Egery, the plaintiffs' agent, that the goods could remain there in the store as plaintiffs' goods. This repurchase, notice, and assent to keep them put an end to the previous arrangement made between Gosselin and Bashaw, as to Bashaw's control of the goods. Gosselin then became the agent of the plaintiffs to keep the goods, and then ceased to be the agent of Bashaw in that respect. After the plaintiffs repurchased the goods, Bashaw had no possession of them, and no control over them in the store, and, thereafter, had no beneficial use of the property, and no actual possession of it.

This was a sufficient change of possession to protect the goods from attachment for the debts of Bashaw. *Barney* v. *Brown,* 2 Vt. 374 ; *Spaulding* v. *Austin,* 2 Vt. 555.

The goods thus remained in the possession of Gosselin for the plaintiffs till October, when he sold out his stock of goods and lease of the store to Palmer, and falsely informed him that the goods in question were Bashaw's; and that Bashaw was to have free access to and control of them. The plaintiffs did not know of this sale to Palmer and change till after the goods were attached. Palmer took possession of the store and goods bought, together with the plaintiffs' goods, understanding that they belonged to Bashaw, and held the actual possession of the goods till they were attached. During this time Bashaw had not claimed or exercised any

act of ownership over the goods, nor had any control or actual possession of them. As a favor to the plaintiffs he had packed the tea for reshipment to Albany. Bashaw, and Egery, the plaintiffs' agent, had tried to sell the goods for the plaintiffs to other parties in Rutland; but the goods remained all the time in the store where plaintiffs left them, which, at the time of the attachment, was in the possession of Palmer.

Did this possession of Palmer, with his erroneous information as to the ownership of the goods and attending circumstances, defeat the protection which the goods were under from attachment for the debts of Bashaw while in the possession of Gosselin for the plaintiffs? We think not. A delivery once perfected cannot be defeated by erroneous information as to the ownership of the goods, moving from a stranger to the title, though he be honestly in possession of the same, especially, so long as the vendor, upon whose debt the goods are attached, has not, since his sale thereof, had the actual possession nor any beneficial use of them, nor exercised any acts of ownership over them.

Palmer was not the agent or servant of Bashaw. He was a stranger to the title, who had honestly come into the possession of the property under his purchase of the lease of the store with the erroneous notice that the property was Bashaw's. But that erroneous information would not make the property subject to attachment for the debts of Bashaw. The notice did not move from the plaintiffs nor Bashaw, and they were not responsible for it. Palmer's possession made him the bailee of it for the true owner; and Bashaw's creditors, while the property remained in the actual possession of Palmer, had no greater right to it for their debts than while it was in the possession of Gosselin. The legal status of the property remained the same. A person's ownership of and rights in and to property are not changed by the erroneous statements made in relation to its ownership by a person, who accidentally comes into the possession there-

of, without the knowledge of the true owner. Palmer sustained no such relation to the property as would make his statements to the officer in respect to the ownership of it prejudicial to the plaintiffs' right therein. Palmer's information was at most hearsay; it moved neither from the plaintiffs nor Bashaw. He did not receive the property from the plaintiffs nor Bashaw. He professed to have no knowledge as to how the property came into the hands of Gosselin. He undertook to tell the officer simply what he . understood Gosselin to say, and that information was false.

The officer was not justified in seizing the property on the information he received from Palmer.

Judgment affirmed.