Bissell, J.
Two sets of creditors are contesting for the title and right to the possession of a Knowles compound pump which was *9 originally sold to The United Leasing Company, a corporation engaged in working some mining property in Creede. The pump was sold by The Hendrie & Bolthoff Manufacturing Company to the lessees, and prior to the inception of this controversy had been delivered but had never been used. That company did not pay for it, became embarrassed, and ■ there was a strong probability that its interests would be closed out by its creditors. Before any actual proceedings were taken by any creditor the Amethyst Company obtained possession of the pump. There is nothing in thé record which enables us to state the terms and conditions on which this company held it. The intervenors, The Hendrie & Bolthoff Company, offered no proof about it, and the only thing in the record is found in the answer of the attaching creditors Collins and Morrow, who state that this company borrowed it and were using it. We are not clear enough about the exact terms of the arrangement to state whether the borrowers had any sort of title or claim. It is quite evident there must have been some agreement with some definiteness in its terms from the situation and condition of the thing borrowed, and the use to which it was to be put. It was a very large compound pump, the purchase price being about $7,600, and as stated by counsel, when the Amethyst Company got it, they lowered it a thousand feet underground to the tenth level, put it in place, and were using it. All mining men know that to cut a Station and lower one of those compound pumps, put it in place and make connections, is a very expensive operation, and would cost at least $2,000 or $8,000. It is hardly probable the Amethyst Company would have taken the pump and gone to the expense requisite to place it in position for use without some agreement respecting their right to retain it. After the Amethyst Company got possession, Collins and Morrow commenced suit by attachment against the Leasing Company to make a debt which this company owed. The writ was placed in the hands of the sheriff who attempted to make service. According to his return the officer did not take possession of the property, made no at *10 tempt to levy on it, and simply served a notice of garnishment on the Amethyst Company, to which they made response that they had a Knowles compound pump which they received from the Leasing Company, but which they were informed was the property of The Hendrie & Bolthoff Manufacturing Company of Denver. Collins and Morrow traversed this return by affidavit, and thereafter Hendrie & Bolthoff came in by petition of intervention and asserted their title. This we will proceed to state according to our view of the evidence as it is exhibited. We premise the statement by the suggestion that there is no conflicting evidence in the record. The matter rests on the correspondence between the president and manager of The United Leasing Company and the president and manager of The Hendrie & Bolthoff Manufacturing Company, and on the evidence given by parties in their behalf on the hearing. These letters and this evidence were in no manner disputed, and practically the only question in the case is as to the conclusions of law and fact to be drawn from it. We make this preliminary suggestion because there is some difference in the- contentions of counsel respecting the force and effect of what is called a finding of the trial court. Substantially, the court concluded from the evidence that there was no sale of the pump to the intervenors and that none was intended by the correspondence. As we look at it this is not a finding of fact at all, but is simply the court’s conclusion drawn from the evidence. We concede the existence and the force of the general rule that findings of the trial court on questions of fact which rest on conflicting testimony are conclusive on us. It is the recognition of this rule, and with reference to the argument based on it, that we have made the preliminary suggestions. Recurring to the situation, it appears the Leasing Company concluded it would be unable to carry its operations to a successful determination, and the board of directors had a meeting to consider what disposition should be made of this pump and some other corporate matters. As already suggested, the pump had been delivered, and lay on the surface of the ground; it had *11 never been paid for nor put into use. At this meeting it was decided that the pump should be returned to Hendrie & Bolthoff if they would give credit for its purchase price. The directors regarded it as only fair that they should return it if Hendrie & Bolthoff would receive it in satisfaction of the debt, and to this extent part of their obligations would be liquidated. The purchase price was the largest debt they owed and amounted to some 17,600. The board authorized Eben Smith, the president and manager of the Leasing Company, to make such an arrangement with Hendrie & Bolthoff. There was no record made in the record books of the company or otherwise of this meeting or of this corporate action. Mr. Smith came to Denver and saw Mr. Hendrie, reported the action of the board, and suggested that he take the pump to satisfy this claim against the Leasing Company. The proposition does not seem to have been then understood by Mr. Hendrie, who was to call on Mr. Smith in regard to it before he left for New York. Mr. Hendrie made an unsuccessful attempt to that end, but Mr. Smith left for New York before the arrangement was completed. Thereafter there was some correspondence between The Hendrie & Bolthoff Manufacturing Company and Mr. Smith with reference to the proposition. When it was explained by this correspondence The Hendrie & Bolthoff Company accepted the proposition, agreed to take the pump in liquidation of their claim and requested Smith to send them a memorandum to that effect, dated as of the 30th of December which was the date of the original attempt to make the transfer. The antedating of the memorandum seems to have been for no ulterior purpose because at the time the arrangement was completed no attachment had been issued and there was no controversy between the Leasing Company and its creditors, or between different sets of creditors of the Leasing Company. Smith transferred the title to the manufacturing company, instructed the Amethyst Company to hold it for Hendrie & Bolthoff, and they communicated with the manager of the Amethyst Company, requesting and directing that corporation to hold *12 the pump for them, which they undertook to do. All this was done before Collins and Morrow had attempted to levy their writ or garnishee the Amethyst Mining Company. The property was not in possession of either the vendor or the vendee, but in that of a bailee, who undertook at the request of the manufacturing company to hold it for their benefit. So far as we can understand the transaction as exhibited by the letters and testimony of the parties, this was the substantial situation when Collins and Morrow served their writ. The garnishment was served, the answer made, issue taken, the intervenors came in and made this proof, and thereon the lien under the attachment was sustained by the trial court, the petition of intervention dismissed, and the intervenors bring the case here.
At the outset, the intervenors insist, under the authority of Crisman v. Dorsey, 12 Colo. 567, that the attaching creditor acquired no right because he failed to take the property, contending that there is but one way to levy a writ on personal property and that is by taking the property into possession. As a general proposition this is true as between debtors and creditors, and between conflicting claimants of personal property. It is not entirely certain, and it is very far from being free from doubt whether it is always true under the garnishment statute, which is chapter 7 of the code. Under that statute wherever personal property is in possession or under the control of a third person, the officer may levy his writ by serving notice of garnishment on this party and the extent of the right, title and interest of the third party may be determined in the garnishment proceeding. It would seem that the legislature intended by the provisions of this chapter to provide a way by which property in the possession of a third person might be reached, and his interest and right be litigated without the necessity to seize the property and remove it from the possession of one who was not the owner nor* the debtor, but had some sort of claim, right or title to it. We do not intend to directly decide this question because it is one of great gravity, and the character of the possession of *13 the Amethyst Company is not sufficiently or definitely established to enable us to decide whether it was such as is evidently intended to be protected and governed by the garnishment act, or whether it was in the general and technical sense the possession of the Leasing Company, which would require the officer to complete his levy by seizure. This defect proceeds from lack of proof, and we shall therefore dismiss it with this simple suggestion. Under some circumstances the statute would be applicable, under others it might not be, and since the case presents no sharply defined issue which compels us to decide it, we must refrain from expressing any opinion about it.
The only other question respects the legal effect of the transaction between the Leasing Company and The Hendrie & Bolthoff Manufacturing Company. It is quite clear that there is no force in the position that the manufacturing company may not succeed because they failed to produce a record of the meeting of the board of directors exhibiting the grant of authority to Smith to act on behalf of the company and transfer the property. In the first place it sufficiently appears that no record was made of the meeting. Under these circumstances we see no reason why the corporate action may not he proven in the ordinary way, and if it appears that the board of directors gave Smith authority to act, and his acts were within the scope of it, these facts may as well be proven in the usual manner as by the production of a record.
It will be remembered the property was in possession of a third person as bailee of the Leasing Company. As such, by the consent of the original bailor, and by request of the subsequent purchasers, to wit, The Hendrie & Bolthoff Company, they held the pump for them. There is no question respecting the sufficiency of the notice, none about the consent, and none about the assumption of the status of bailee as to The Hendrie & Bolthoff Company. Under these circumstances and the general rule respecting the transfer of possession when it is in the custody of a third person there would seem to be a sufficient transfer of possession as against the subse *14 quent attaching creditor. The authorities concur on this question. Wing & Son v. Peabody, 57 Vt. 19; How v. Taylor, 52 Mo. 592 ; Lamore v. Frisbie, 42 Mich. 186; Hodges v. Hurd, 42 Ill. 363; Stowe v. Taft, 58 N. H. 445; Carter v. Willard, 19 Pick. 1; Worman v. Kramer, 73 Pa. St. 378.
With the concession or the establishment of this principle the title of The Hendrie & Bolthoff Manufacturing Company is clear. The Leasing Company undertook to retransfer it to the vendor in settlement and satisfaction of the debt. They authorized their manager to make the transfer and it was accepted by The Hendrie & Bolthoff Manufacturing Company, who instructed the prior bailee to hold it for them, who thereupon undertook so to hold it, and the entire transaction was completed and concluded before Collins and Morrow levied their writ. Since this is true, regardless of the actual equities 'as between the two sets of creditors, we can see no legal escape from the conclusion that the rule prior est in tempore must apply, and The Hendrie & Bolthoff Company be permitted to maintain the advantage which they acquired by the consent of the debtor, who under the law had the right to pay them in preference to paying any other of his creditors.
It is scarcely necessary to cite authorities to the proposi- ■ tion with which we began our statement, that this court is not concluded by what is called a finding of the trial court because there is no conflicting evidence. The only question is, whether on the evidence certain legal results follow, or whether the facts do not warrant the application of the legal principles which will give the title to the manufacturing company. One case is as good as a dozen, and the rule was recognized and reiterated, or rather the exceptions to the rule were recognized and reiterated, in a very late case, The Beulah Marble Co. et al. v. Mattice, 22 Colo. 547.
This discussion is a practical disposition of the various propositions on which the respective counsel rely. It clearly outlines and indicates our views respecting the only matters in dispute, and being resolved in favor of the appellants, compels the reversal of the judgment.

Reversed.