ROBSON *v.* TOWNLEY.

1. MORTGAGES—DEED AS SECURITY—VENDOR AND PURCHASER—ESTATES BY ENTIRETY.

   In a suit for partition brought by one of the heirs of decedent, who had executed a deed of his farm to a third party, receiving back a contract for reconveyance to decedent and his wife by the entirety, the purpose being to secure the grantee for money advanced, the rights of the parties are to be determined by the contract, and although the deed was in the nature of a mortgage or security for a debt, the rights of decedent passed at his death to the wife, and the children obtained no interest in the real property.

2. SAME—WAIVER—HUSBAND AND WIFE.

   The wife did not waive her legal rights by accepting a quitclaim deed from the grantee or mortgagee, upon full performance of the contract.

Appeal from Chippewa; Shepherd, J. Submitted June 12, 1913. (Docket No. 86.) Decided July 18, 1913. Rehearing denied January 5, 1914.

Bill by John Robson against Margaret Townley and others for partition. From a decree for defendants, complainant appeals. Affirmed.

*George P. Stone* and *George A. Cady,* for complainant.

*M. M. Larmonth* and *H. L. Parsille,* for defendants.

KUHN, J. The circuit judge who heard this case filed the following statement of facts, which concisely gives the history of the transactions which led up to this litigation:

"On or about April 10, 1880, William Robson made homestead entry for the land described in the bill of

complaint in this cause, and made final proof thereon April 2, 1887. On May 5, 1887, the records show that Robson and his wife, Elizabeth, mortgaged this land to the Sault Savings Bank of this city, which mortgage was foreclosed and the sheriff's deed executed to said mortgagee on August 4, 1890. On July 29, 1891, Robson and his wife executed a quitclaim deed conveying the land to Norman H. Wells. On August 1, 1891, the land was redeemed from the sheriff's sale, and the mortgage to the Sault Savings Bank thereby discharged. On March 10, 1894, a suit was instituted by Robson to have the deed to Wells declared a mortgage. In a cross-bill filed in this suit by Wells, he admits the transaction was a mortgage in effect, and prays for the foreclosure of the same. And on February 17, 1897, a decree was entered declaring the deed to be a mortgage, and providing for the foreclosure sale and immediate possession to be given to the purchaser at any time after July 1, 1897. On August 13, 1897, Robson and wife executed a special warranty deed running to David Brown; the special clause being the exception in the warranty of the mortgage given to Norman H. Wells. On September 25, 1897, David Brown, William Robson, and Elizabeth Robson entered into a contract whereby, upon payment of a stipulated amount to be made in payments and at times therein stipulated, Brown was to convey to William Robson and Elizabeth Robson, his wife, by warranty deed, the said land free and clear of all incumbrance, except such as may have accrued upon said land subsequent to that date, or through the acts or negligence of the parties of the second part. All the payments on this contract were made by Elizabeth Robson and all the receipts taken in her name, individually. On June 22, 1901, Elizabeth Robson, individually, executed a mortgage to the Sault Savings Bank in the sum of $930, and on the same day a quitclaim deed, executed by David Brown and wife, was given to Elizabeth Robson. On August 16, 1901, William Robson died. On April 18, 1903, Mrs. Robson executed in proper form a will devising the land to the three boys who had remained on the farm, dividing the land equally among them. On June 4, 1911, Mrs. Robson died. Referring to the date upon which the deed from William Robson and

his wife to Brown was made, it appears that on the last day, to save the farm from the sale under the Wells mortgage, William Robson and his wife called upon Brown at his home and implored him to save the farm; that Mrs. Robson conducted the business for the family; that Mr. Robson was a heavy drinker and could not be trusted with money; that an arrangement was effected whereby Brown took up the Wells mortgage, paying Wells himself, and also took a warranty deed from Robson and wife, subject to the Wells mortgage. There is nothing in the testimony to show why the contract for a resale or instrument of defeasance was dated over a month subsequent to the execution of the deed to Brown. No explanation is given why it provided for a reconveyance to Robson and wife rather than to Robson alone."

The bill of complaint is filed to obtain a decree declaring the deed from William Robson and wife to Brown to have been a mortgage, and adjudging that William Robson died seised of the title in fee to the land in question, subject only to the mortgage to the bank and the dower rights of the widow; and that at the death of Elizabeth Robson the 10 surviving children and heirs at law of William Robson were seised of an indefeasible title and right of possession, as such heirs, to ten-elevenths of the premises. There were 11 children, but one daughter died about 2½ years after the death of the father, and at the time of her death was above the age of 21 years, unmarried, and left no heirs of her body. The bill prayed that the land might by said decree be partitioned to them, respectively, as their respective rights and interests might appear.

It is the contention of the complainant that William Robson, Sr., never parted with the fee title to the land in question, and the deed to Brown and the contract given by him to Robson and wife together constituted a mortgage. The contention of defendants is that as Robson and his wife were about to lose the property under the Wells mortgage they agreed to deed their

equity of redemption to Brown, and that Brown by the warranty deed which was given received the legal and equitable title to the premises. By the contract which was subsequently given to them it was agreed that when the terms were complied with the full title to the land would go to Robson and his wife by the entireties. The trial judge, who heard the proofs, dismissed the bill, and complainant appeals.

The rights of the parties, it seems to us, should be determined by the contract which was made. It is not unreasonable to assume that, in view of the habits of her husband and his inability to save any money, Mrs. Robson should insist that the contract make provision so that, when she had by her own efforts paid for the property, she would be protected. *Barber* v. *Milner*, 43 Mich. 248 (5 N. W. 92). The fact that she took a quitclaim deed from Brown does not affect her legal rights. She waived nothing by taking it. *Lamore* v. *Frisbie*, 42 Mich. 186 (3 N. W. 910).

Under the contract, upon compliance with its terms, Robson and his wife were entitled to have a deed from Brown creating the estate by the entireties, which, on the death of Robson, would have gone to his wife by the right of survivorship. If Robson had outlived his wife, unquestionably his heirs would have been entitled to inherit. It therefore clearly appears that if the contract had been carried out the situation would have been the same as now left by the decree of the court, and complainant has no right to complain, and is not entitled to the relief prayed for.

The decree is affirmed, with costs.

STEERE, C. J., and MOORE, MCALVAY, BROOKE, STONE, OSTRANDER, and BIRD, JJ., concurred.