CHEMICAL BANK OF SWEET SPRINGS, RESPONDENT, v. E. F. RHODES ET AL., DEFENDANTS, JOHN W. KNAUS, APPELLANT.*

Kansas City Court of Appeals. January 6, 1930.

**218**

*Corpus Juris-Cyc. References: Fraudulent Conveyances, 27CJ, section 293, p. 574, n. 24; section 310, p. 584, n. 6; section 317, p. 587, n. 34; p. 588, n. 35.

*Barnett & Hayes* for respondent.

*M. D. Aber* for appellant.

BLAND, J.—This is a controversy between plaintiff, a judgment creditor, and a claimant under section 1635, Revised Statutes 1919, involving the ownership of eight cows and four calves. At the close of all of the testimony the court sustained plaintiff's demurrer to the evidence, resulting in a verdict and judgment for plaintiff. Claimant has appealed.

The facts show that on April 5, 1928, plaintiff filed this suit asking judgment against defendants for the balance due on a promissory note. On May 28, of that year a judgment was rendered in favor of plaintiff and against defendants for $1226.23 and costs. On June 14, 1928, execution was issued upon the judgment directed to the sheriff of Johnson County who, on the same day, made a levy under the execution upon the cows and calves in question located in the pasture of one Carl Swisher in Johnson County. The sheriff took the stock into his possession and put them in another pasture. Thereafter on the next day John W. Knaus, the claimant herein, filed with the sheriff his claim under section 1635, Revised Statutes 1919, claiming to be the owner of the stock in question.

The facts further show that on May 24, 1928, E. F. Rhodes of Pettis County, one of the defendants herein, was the owner of the stock in question together with another cow, a heifer and mules. Claimant testified that said Rhodes came to the witnesses' residence on said day seeking to sell "some cows and little calves and some

heifers'' owned by Rhodes. Claimant agreed to go and see the stock. The two then went to Swisher's pasture which was one and three quarters miles northwest of claimant's residence. There they viewed the eight cows and four calves in controversy. They observed that a newly arrived calf had not yet taken nourishment and that the mother needed attention. Following this the two went some eight or nine miles to the home of Rhodes, which was in the northwestern part of Pettis County, where another cow, a heifer and some mules were viewed. The witness offered Rhodes $680 for the cows, heifers and mules but no sale took place. The next day, about sundown, Rhodes returned to the witnesses' home where the cows, heifers and mules were sold to claimant for $700. Claimant drew a check upon the Bank of Knobnoster in favor of Rhodes for the amount, which check was cashed by Rhodes.

At the time the check was delivered by claimant he inquired when the property would be delivered and Rhodes replied ''right now in Swisher's pasture, and the others as soon as I get the crop in.'' Rhodes further said ''you had better look after that cow . . . the calf isn't taking any milk.''

Claimant further testified that he arranged with the bank for the cashing of the check, ''and I don't know whether just that day or the next, but a few days after that I went down to this pasture and seen that the calf was taking the milk;'' that he told Rhodes when he purchased this stock ''you see Swisher and tell him who to look to for the cattle and pasture deal;'' that Rhodes replied, ''all right, and if you see him you tell him;'' that he did not see Swisher or Rhodes after that until the sheriff came and took the stock.

The claimant further testified that when he purchased the cattle he knew Rhodes was in financial difficulties; that they were related, (but the degree of relationship was not shown); that he knew Rhodes had lost his farm; that Rhodes told him that he (Rhodes) had been sued; that he inquired of Rhodes if there was anything against the stock and Rhodes replied, ''nothing in the world;'' that he supposed Rhodes was selling the cattle in order to get the money on them. Asked in reference to what he did after he purchased the cattle he testified:

''I went down there (the Swisher pasture) several times to see that this calf was taking this milk, because I didn't want to spoil the bag; the calf was taking the milk, consequently, I didn't have to drive her to the house to fix her up.

''Q. And how often did you do that during the period following the purchase until the sheriff got the cows? A. I'll say several times, because I never kept account; I wasn't looking for nothing of this kind you know.

The claimant further testified that the cows in question were white face stock and were in the pasture with a white face bull;

that the cows were left in the pasture by him so that they might be bred to a white face bull, as well as get the grass; that the witness's bull at his farm was a black one.

It is insisted that the court erred in sustaining the demurrer to the evidence for the reason that title to the stock passed to claimant as against defendant's creditors for section 2282, Revised Statutes 1919, was complied with in that the delivery of the stock in question by Rhodes to claimant was sufficient "until the expiration of a reasonable time for delivery of possession, regard being had to the situation of the property," and what was a reasonable time in this instance was a matter for the jury. This point will be ruled against claimant for the reason that it is well settled that in such circumstances where the property sold is in the possession of a third person holding it as bailee or agister for the seller, if actual delivery is not made, the bailee should be notified of the sale. [Hopson v. Pregge, 228 S. W. 859; How v. Taylor, 52 Mo. 592; Halderman v. Stillington, 63 Mo. App. 212; Harrison v. Foster, 62 Mo. App. 603; Worley v. Standley, 22 Mo. App. 546; Peck v. Brummagim, 90 Am. Decisions, 196; Buhl Iron Works v. Teuton, 67 Mich. 623; Whitney v. Lynde, 16 Vt. 579, 27 C. J., pp. 587, 588.]

However, it is insisted by appellant that the fact that only nineteen days expired between the time of the sale of the stock in question until they were levied on and that claimant was "exercising control and dominion over them all the time," that he was "there among the animals in plain sight of the public at frequent intervals;" that he "did much more of the acts giving public notoriety in his ownership than to quit his plow in the field, and ride over to Swisher's to tell him;" that "he went openly into the pasture, among the cows, several different times, and there in person where any person might see him exercise the ordinary dominion over livestock which owners do;" that claimant paid a "round price" and it was a question for the jury whether the leaving of the stock "in a pasture of a third person, during his busiest farming season, while the cows were calving, and where the ministrations of a desired bull could be had" was contrary to the requirement that the stock must have been delivered within a reasonable time.

Claimant's testimony was very indefinite as to his visits to the Swisher pasture. The only evidence as to his visits was that he went there several times beginning a few days after the sale. However, giving full credit to his testimony, we do not think that his visits to the Swisher pasture were sufficient to give that notice to the public which the law required. There is no evidence of the number of times that claimant went to the pasture or that any one saw him when he did go. In addition to this, there is nothing to show, as far as notice to the public was concerned, whether claimant's visits to the pasture were as the owner of the stock or as agent for

Rhodes. The object of a delivery is to give notice to the world that the property has changed hands and the title has passed from the vendor to the vendee. [Halderman v. Stillington, supra, l. c. 218.] While only such delivery must be made to the buyer as the articles are reasonably capable of under the circumstances, and while there is no requirement that there be a physical delivery of the property where it is in the hands of a third person the law does require notice to such a person so that when one interested in making an investigation finds the property in the possession of such a person he may make inquiry of him as to the title to it. [Hildreth v. Fitts, 53 Vt. 684; Hodges v. Hurd, 47 Ill. 363; Trimble v. Hunt, 169 Ill. App. 259; Flanagan v. Wood et al., 33 Vt. 332; Sleeper v. Pollard, 28 Vt. 709.] So when the bailee or agister is notified that the property is sold, and he is directed to hold it for the purchaser, the requirement of notoriety of the sale is sufficiently complied with. We have examined the cases cited by claimant and find them not in point. There is no excuse shown in the testimony for the failure to notify Swisher, the agister, of the sale in this instance, and the parties had such a notification in mind.

It is quite apparent that the statute was not complied with under the circumstances and the action of the court was proper.

"Where the undisputed facts of a case show that a sale was not accompanied by delivery in a reasonable time, regard being had to the situation of the property, it is, under the statute, fraudulent and void, and it is the duty of the court to take the case from the jury." [Bowles v. Hunter, 91 Mo. 418, 423.]

The judgment is affirmed. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.